KEYSER, JUDAH & CO., APPELLANTS, VS. B. F. SIMMONS, ET ALS., APPELLEES.

1. Where A. attends conferences of creditors as to the general settlement of the estate of an insolvent debtor, and during this period collects an asset of the insolvent under directions from him to hold the proceeds until settlement with creditors, and afterwards, at a final conference of creditors, resulting in a general assignment, he signs a statement admitting the claim so collected to be an asset of the insolvent, he is estopped from afterwards denying that fact and setting up his own claim as a set-off.

2. The recital in a bill brought by an assignee to recover assets which passed under the assignment, that he is also a creditor of the insolvent debtor, does not render the bill multifarious.

Appeal from the Circuit Court for Escambia county.

C. L. LeBaron & Son were the insolvent debtors mentioned in the opinion. They made an assignment of their effects to the complainants, B. F. Simmons, *et als.* The other facts of the case are stated in the opinion of the court.

*J. C. Avery* for Appellants.

I. Upon their bill appellees are not entitled to a decree.

They sue (1) as creditors and (2) as assignees of C. L. LeBaron & Son.

1st. As creditors: They claim that they are the beneficiaries of a trust created by C. L. LeBaron & Son, in appellants, by a transfer made December 26th, 1874, of the fund in dispute, and that as such they are entitled to a decree.

But the bill alleges that, afterwards, on the 23d of January, 1875, C. L. LeBaron & Son did assign the very same fund to other persons in trust.

Now if the last-alleged trust was created, the first could not have been, because a trust once declared and accepted cannot be revoked. Hill on Trustees, 126, 7 & 8, 351; Burrill on Assignments, 325 ; 1 Wms. Extrs., 526 ; 2 ibid, 843.

But appellees say in their bill that this last-alleged trust was created—a positive allegation to be taken as true against them. 1 Danl. Chanc. Prac., 838.

It therefore follows inevitably that the alleged trust of December 26th, 1874, was not created, and that appellees, as beneficiaries of such trust, cannot succeed—whether mediately or immediately.

2d. As assignees: Appellees claim that as assignees of C. L. LeBaron & Son, they are entitled to a decree.

To sustain this claim, they allege that on the 23d of January, 1875, C. L. LeBaron & Son assigned the fund sued for to them.

But C. L. LeBaron & Son could not have passed anything by the assignment without some title, legal or equitable.

Now the bill alleges that before this, on the 26th of December, 1874, LeBaron & Son had transferred the same fund in trust to other parties. The legal title then vested in the trustees and the equitable in the *cestuis que trust,* leaving none in the assignors.

Hence, as assignees under the assignment of January 23d, 1875, appellees acquired nothing, and cannot succeed.

If LeBaron & Son did have any title to assign, then the money was held by appellants for LeBaron & Son, and appellees, as assignees, took subject to appellants' equities against LeBaron & Son. Burrill on Assignments, 438; 2 Story's Eq., §1,038.

That these objections may be raised at the final hearing, there seems to be no doubt. Story's Eq. Pl., §283; Davies vs. Quarterman, 4 Younge & Coll., 257; 1 Danl. Ch. Pr., 542–3.

Where property may be made the subject of a legal transfer—as in case of bills of exchange, promissory notes, &c.—an assignment will operate to vest the legal ownership in the trustees. 1 Wms. Extrs., 526; Hill on Trustees, 351; Story's Eq., §591.

II. It follows that the bill is multifarious.

The interest of the creditors and that of the assignees are not common.

They assert distinct and several claims against the same defendants.

The bill is therefore multifarious, because of the improper joinder of plaintiffs, claiming no common interest. Story's Eq. Pl., §279.

III. The bill is not sustained by the evidence.

1st. The bill charges that appellants were LeBaron & Son's most trusted advisers; and on account of their high

standing in the community they were permitted to and did take a leading part in efforts made to bring about a settlement.

(*a.*) Admitting the charge, it is inconceivable that appellants should for that reason be precluded from taking measures for their protection which other creditors might have taken.

Creditors are not bound by an intention to assign. They are not bound, and may secure a lien by attachment at any time before the assignment is actually accepted by the assignees. Burrill on Assignments, 318–322.

There is nothing shown sufficient to abridge appellants' rights in this regard, more than those of other creditors, before assignment made and accepted.

(*b.*) But the answer denies that appellants enjoyed the prominence the bill awards them.

The witnesses for appellants all sustain the answer in this regard ; while the witnesses for appellees, upon examination, were forced to admit that appellants' prominence was passive in its nature, arising from the amount of their debt and integrity of their character.

2d. The bill alleges that at the first meeting called by Le-Baron & Son, they proffered to turn over all of their assets for the benefit of all their creditors, and that appellants assented thereto.

The answer denies this, and there is no evidence to sustain charge.

LeBaron in his testimony says the meeting was simply "to express my situation and know their views."

3d. The bill charges and the answer denies that the $1,500 was placed with appellants in trust for the creditors.

The only evidence upon this point is the letter of LeBaron & Son to appellants.

LeBaron in his testimony says it was also verbally under-

stood; but Judah in his testimony denies this, saying the letter was all appellants had in relation to the fund.

'Tis true the bill charges and the answer admits appellants' silent acquiescence when, at the last meeting of creditors, a statement was read, embracing this $1,500 in Le-Baron & Son's general assets, and appellants making no claim of right to hold the same. But in view of the circumstances, appellants silence cannot be construed as confessing the trust now sought to be fastened on them. It must be considered that this meeting and statement were both in connection with a proposed settlement with the creditors which had been in contemplation for more than a month, and which was to be carried out only in case of acceptance by all. With this understanding appellants signed. The arrangement failed, and LeBaron & Son made another and different assignment, without reference to agreement with creditors, under which appellees act.

Appellants then stood in the same position as before signing the statement.

It is in evidence that this proposed assignment made reservation in favor of the debtors; that alone vitiated the whole proceeding. Burrill on Assignment, 168, and authorities there cited.

We are thrown back then to the letter which accompanied the bill of exchange to ascertain in what capacity appellants received the $1,500.

Appellants are instructed to " collect for account of whom it may concern."

(a.) LeBaron & Son may have intended the collection for the benefit of all their creditors, but appellants are not charged with a knowlege of that intention, unless it was communicated, which is denied.

That LeBaron & Son did not intend to create such a trust as described, is evident from the fact they afterwards assigned the fund to other parties, and still later gave a

written order upon appellants for it, thus showing it was not their intention to part with control over it.

This reservation of control by the assignors is fatal to the trust sought to be established. (See the authorities cited above.) Drake on Attachment, §525; 1 Wms. Extrs., 526; 2 ibid., 848; Baker vs. Moody, 1 Ala., 315; Clark vs. Cilley, 36 ibid., 652; 18 Mo., 281.

(b.) In order to fasten a trust on property of any description the subject matter and the person who is to receive the beneficial interest must be clearly pointed out. 2 Story's Eq. Jr. §979, a; Hill on Trustees, 91, 164, 173–5, and authorities there cited.

Here no effort is made to point out the beneficiaries of the deposit, and a resulting trust should be decreed. (Same authorities.)

(c.) There is nothing in the letter to evidence an intention to create such a trust as is charged. To succeed appellees must establish, not another, but the same trust. 1 Danl. Ch. P., 856 and 860.

(d.) Were appellants not creditors, and had they received the money under the same instructions, and a creditor of C. L. LeBaron & Son had garnisheed appellants, what must have been their answer? They must have admitted indebtedness. Who is there that could successfully have interposed a claim to the money based on the letter in evidence? No one. Drake on Attachment, §525.

4th. The general assignment is charged and admitted. The testimony of nearly all, if not all, of the witnesses shows that the first assignment and arrangement sought to be made by and between the creditors failed, and was by mutual consent abandoned.

LeBaron & Son had a right to make the asssignment that they did finally make to appellees. But the assignees took subject to all liens and equities which had previously

attached. Burrill on Assignments, 438 ; 2 Story's Eq. Jr., §1038.

5th. The bill charges, and the answer denies, that appellants promised appellees to pay the money over to them as assignees when required.

(*a.*) There is no consideration for such a promise.

(*b.*) The charge is not sustained by the positive testimony of two witnesses.

In relation to the entire testimony of the three appellees, it should be remembered that they are co-complainants in the cause, and though competent witnesses for themselves, their oaths should not be considered as disparaging responsive denials of the answer, unless they seem to the court entitled to the weight of the oaths of two credible witnesses. 1 Danl. Ch. Pr., 845, n ; Vandergrift vs. Herbert, 3 C. E. Green, (N. J.,) 466.

*E. A. Perry* for Appellees.

C. L. LeBaron & Son, late bankers, brokers, &c., being unable to meet all their liabilities, on the 15th day of December, 1874, suspended business, so informed their creditors, and on that day invited some of their principal creditors, and especially the appellants, to a conference, at which they proffered a surrender of all their assets for the benefit of all their creditors. Subsequent meetings of the creditors were held, at all of which the appellants actively participated ; and one of the appellants was appointed by creditors on a committee to examine the books and affairs of the insolvents, and report for the information of the creditors generally.

After the proffer of surrender of assets, and pending the proceedings prior to the actual assignment, a certain bill on New York, part of said assets, falling due, LeBaron & Son, with a view to protect the assets and carry out in good faith

their offer and agreement, to and with their creditors, handed the bill to appellants in trust to collect and the proceeds to hold for the benefit of all the creditors, pending the steps then in progress for carrying out their offer to surrender and assign over their assets to their creditors. This purpose in giving appellants said bill is evidenced by the following instructions, in writing, given them with the bill:

"PENSACOLA, FLA., December 26, 1874.

" MESSRS. KEYSER, JUDAH & CO :

"*Present—Dear Sirs:* Hand you to collect for account of whom it may concern assets of C. L. LeBaron & Son—

"Marquis & Co. on Rubina & Co., N. Y., payable on delivering B. L. ship't per Mausita................$1,500.00

" This is on account of what Marquis & Co. owe us, and it had better be sent on to N. Y. at once. The Mausita will be loaded next week. .

" When collected, please order the funds out in currency by express, to be kept by you till our settlement with creditors. · · Yours truly,

"C. L. LEBARON & SON.

" No entry of the above on our books, and will not be till we have settlement with creditors."

These instructions the appellants, without objection or dissent, proceeded to carry out, and did so far as to collect the bill. And afterwards, at a meeting of creditors and upon a report of the committee, of which one of appellants was an active member, a statement was produced showing the liabilities of the debtors and the assets to be turned over for distribution among all the creditors. The statement exhibited the indebtedness of LeBaron & Son to Keyser, Judah & Co., as $3,295.16, the same as it existed at the time of suspension; and said statement exhibited the $1,500 so collected by appellants as one of the assets to be surrendered and assigned over for the benefit of all the creditors.

The correctness of such statement was assented to by the

creditors present, and particularly by the appellants who indicated such assent to the correctness of the statement as to the indebtedness to themselves, and the $1,500 being an asset to be assigned and used for the benefit of all the creditors, by placing their signatures to the statement. All this was done, the statement read and signatures affixed by appellants in open meeting and in presence of creditors, a majority of all whom were present. Thereupon, after nomination of assignee by appellants, and their election by the creditors, and after preparation of proper deeds, an assignment was made by LeBaron & Son to the appellees of all their assets, including the $1,500 in the hands of Keyser, Judah & Co. This $1,500, although for some time they seemed willing to pay it over, and left upon the minds of the assignees the impression that they would pay it when required for distribution, at last, on the 27th of April, 1875, the appellants upon demand refused to pay to the assignees, claiming the right to hold it and appropriate it exclusively towards the payment of the indebtedness of C. L. LeBaron & Son to themselves, well knowing and admitting that a fair and equal distribution of all the assets will pay the creditors only some ten or fifteen per cent. of indebtedness. Upon such refusal the assignees filed their bill of complaint, setting forth substantially the foregoing facts.

Bill filed May 8, 1875. To this bill Keyser, Judah & Co., respondents in the court below, demurred generally. The demurrer was overruled and respondents answered. Complainants replied and proofs being taken, the cause came on for hearing, and the court decreed in favor of complainants for the $1,500, and interest from the date of demand and refusal to pay the amount over, to-wit: from the 27th day of April, 1875. From this decree respondents appeal upon three grounds: 1st, because the bill does not present a case entitling complainants to a decree; 2d, because the bill is

multifarious; 3d, because the bill is not sustained by the evidence.

Appellees contend the bill presents an unusually strong case entitling them to the decree rendered by the court below. In their characters as creditors as well as that of assignees, there was to them an equitable assignment, that is, there was assigned to them a chose in action and a trust. 2 Story Eq., §§1041, 1046.

In view of the admitted facts, and the existence of the bankrupt law, it is clear the only question to be determined by the creditors in their deliberations was, should they accept the voluntary assignment, or should they force a settlement through a bankrupt court. When the statement of liabilities and assets was read to the creditors, had Keyser, Judah & Co. claimed the $1,500 as a payment on account of the indebtedness to them, there was probably not a creditor present who did not know that a bankrupt court would compel the amount to be paid to its assignee for general distribution. And had Keyser, Judah & Co. then claimed the $1,500, is there any doubt but the insolvent firm's affairs would have been settled in a bankrupt court?

Are the appellants to be permitted to thus mislead their fellow-creditors? To thus keep their friends, LeBaron & Son, out of the bankrupt court, by admitting the $1,500 a general asset until the time limited by the law for forcing them into bankruptcy may have expired, and then turn around and claim that $1,500 as their-own?

Was there ever a clearer case of estoppel?

As to the second ground of appeal:

The appellees are unable to foresee in what particular the appellants hold the bill to be multifarious. Certainly all the grounds of the bill "arise out of one and the same transaction, or series of transactions, forming one course of dealing, and all tending to one end, and one connected story can be told of the whole." Story's Eq. Pl. §271, b.

As to the third ground of appeal:

The bill is surely sustained by the evidence; indeed, it may be said, it is admitted by the answer. The only material allegation of the bill denied by the answer is the allegation that the bill for $1,500 was turned over to appellants in trust, and for the purposes, and to the end that they should, in behalf of all the creditors, collect the same and keep in trust for said creditors.

And this denial being accompanied by the written instructions, with which the bill was given to, and under which it was received by appellants, amounts to a denial of the law simply. Adams vs. Adams, 21 Wal., 185.

Without evidence beyond the answer, the decree is sustained.

In addition to admissions in answer, appellant, Judah, in answer to 5th interrogatory, says: "It was the intention of our firm to pay over the proceeds of the draft collected for the general benefit of the creditors; but after a number of them (the creditors) refused to sign the proposed agreement, at a meeting called for the purpose, we decided to withhold it."

Does it anywhere appear that the appellants, at that meeting, made known their change of intention to the other creditors, so as to enable the other creditors to refuse the voluntary assignment, and demand instead a settlement in bankruptcy? The fact that the assignment was made, that the firm was not put in bankruptcy, and that no creditor has subjected any of the assets to his own exclusive use, shows conclusively that the creditors acquiesced in the plan for distribution by voluntary assignment, rather than through the bankrupt court. And the inference is irresistible that appellant's actions at the meetings aided no little in bringing about such acquiescence.

Can a party come before a court of equity in the face of this court's opinion in Strong vs. Willis et al., 3 Fla., 124,

and claim that he may one day be a trustee, and on the next assail the trust and subject the trust property to the payment of a debt due himself?

The decree should be sustained with costs, and damages should be allowed the appellees.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

It appears in this case that the insolvent debtors, on the 15th of December, A. D. 1874, suspended business and had a meeting of their principal creditors, among whom were the defendants, Keyser, Judah & Co. The defendants admit that at said conference they were present, and that they, with the other creditors present, had a general consultation " as to what steps should be taken." The plaintiffs allege that at said conference the insolvent debtors proffered to turn over for the benefit of all the creditors all their assets, to which the creditors, including defendants, assented. They then state that after frequent conferences were held upon the basis of this understanding, and on the 26th of December, A. D. 1874, a certain bill, a part of the assets of the insolvent debtors, being due and collectable in the city of New York, in pursuance of the understanding recited, was delivered to the defendants in trust that said defendants for and in behalf of all the creditors should at once send the same to New York for collection, and when collected should order the funds sent back to be retained by them in trust to be applied to the creditors; that said defendants collected said bill and now hold the proceeds.

That at a meeting of the creditors on the 23d of January, 1875, called for the purpose of indicating proper parties to act as assignees, the defendants being present, they, the plaintiffs, were elected such assignees. That at said meeting a statement of the assets and liabilities was read; that such statement of assets included the bill collected by de-

fendants amounting to $1,500, as well as set forth the amount of indebtedness of the insolvents to the defendants $3,295.16, and that the defendants signified assent to such statement by signing the same, and made no claim that the $1,500 was their exclusive property. Thereupon the insolvent debtors made a general assignment, naming plaintiffs the assignees. That defendants, when subsequently called upon, refused to deliver said $1,500, and now claim to set off against it their debt of $3,295.16. The defendants admit that they attended the first meeting, but allege that it was well understood that any party was to be free "to reject any plan of settlement fixed upon to be submitted to the creditors at a future meeting, and that the same understanding existed as to attendance upon all subsequent meetings until a final acceptance of some definite plan, and that *before the said day of assignment* they never accepted any plan of settlement."

They acknowledge the receipt of the bill for $1,500 for collection, but deny that they were to hold the moneys in trust for the creditors. The defendants in their answer, relating what occurred at the meeting at which the plaintiffs were elected assignees, admit "that at a meeting of the creditors on or about the 23d day of January, A. D. 1875, called for the purpose of indicating proper parties as assignees, the said defendants being present, nominated parties to act as such assignees, which resulted in the election of complainants, and that at said meeting a statement of the assets and liabilities was read, and said statement included the said fifteen hundred dollars then in the hands of defendants, and set forth the amount of said C. L. LeBaron & Son's indebtedness to these defendants, to wit: $3,295.16, and defendants being present did not object to the same, and placed defendants' signature against the statement of said indebtedness to said defendants, and made no claim at the time that the said fifteen hundred dollars was not gen-

eral assets, as set forth in said statement and held by them in trust for all the creditors, and properly included in the schedule to be assigned to complainants."

The defendants in their answer also admit that the bill which they collected pending the conferences as to an assignment was transmitted to them by the insolvents in the following letter:

"PENSACOLA, FLA., December 26, 1874.
"MESSRS. KEYSER, JUDAH & CO.:

"*Present—Dear Sirs:* Hand you to collect for account of whom it may concern assets of C. L. LeBaron & Son—

"Marquis & Co. on Rubina & Co., N. Y., payable on delivery B. L. shp't per Mausita...................$1,500.00

"This is on account of what Marquis & Co. owe us, and it better be sent on to N. Y. at once. The Mausita will be loaded next week.

"When collected, please order the funds out in currency by express, to be kept by you till our settlement with creditors.                    Yours truly,

"C. L. LEBARON & SON.

"No entry of the above on our books, and will not be till we have settlement with creditors."

These instructions the appellants, without objection or dissent, proceeded to carry out, and did so far as to collect the bill.

There was a replication to this answer, proofs, hearing, and decree for the sum of $1,500 and interest. It is unnecessary to state here the proofs. The clear admissions contained in the answer dispose of the case.

The first proposition made by appellants here is based upon the idea that the bill alleges that there was an assignment made on the 26th December, 1874. The bill alleges that there was a meeting of creditors at that time to consider "what steps should be taken" in the interest of all the creditors, and the answer admits that the meeting was had

to determine what was best to be done in the premises. The only assignment set up in the bill is that of 23d January, 1875, and the defendants admit that they assented to it.

So far as the letter of the insolvents enclosing the bill to defendants is concerned, its effect, according to. its plain terms, was to give the defendants the right to hold and have the possession of the funds until a settlement with their creditors. This assignment, with the approbation of defendants, was made for that purpose, and in view of the surrounding circumstances it was the time at which the right of the defendants to hold the money terminated. It makes no difference whether this is called a trust or a bailment. It is unnecessary to enter into the discussion of these questions. We find the defendants attending the conference as creditors before this letter was written, taking an active part as to the matter of a general assignment, and collecting this bill under express directions looking to carrying out this general settlement. In addition to this, at the time the general assignment was made, they expressly admitted and affirmed that they held this bill as an asset of the firm. They are now estopped from alleging that to be false which they then under their hand admitted to be true. The court properly treated this money as an asset of the firm.

There is nothing in the objection to the bill in this case on the ground of multifariousness. The bill is brought by the assignees of an insolvent debtor to recover what is alleged to be an asset of such debtor for which the defendants are liable. The plaintiffs, it is true, allege that they are creditors as well as assignees of the insolvent debtor, but looking to the prayer of the bill and its general structure, it is apparent that the entire right and equity which they seek to assert is founded in their powers under the assignment, and that the allegation that they are creditors is simply by way of recital of their full relations to the insolvent as well as to the defendants, there being no legal objection to the

union of the two relations of creditor and assignee in the same persons.

The decree is affirmed.