GEORGE B. MURRELL, *Appellant,* v. WILLIAM R. PETERSON and PETERSON-MCNEILL COMPANY, A CORPORATION, *Appellees.*

1. In a suit in equity, as well as in an action at law, every pleading, when properly attacked, is to be construed most strongly against the pleader thereof; so, in passing upon a demurrer to a bill in equity, every presumption is against the bill.

2. Where there are contradictory or inconsistent allegations in a bill, its equity will be tested by the weaker rather than by the stronger allegations.

3. A court of equity cannot grant relief when the complainant's own showing in his bill demonstrates a want of equity in his prayer.

4. A correct ruling of the trial court will not be disturbed by an appellate court because of erroneous or wrong reasons which may have been given therefor, as it is with the ruling itself, and not with the reasons therefor, with which an appellate court is concerned. If a demurrer to a bill in equity should have been sustained on any of the grounds thereof, it is wholly immaterial that the trial court may have given a wrong reason for a proper ruling.

5. Where a bill in equity is filed against two or more defendants seeking an accounting, the payment of damages which the acts of the defendants may have occasioned the complainant, the partition of lands and for general relief, even if it be assumed that all such matters may be properly united in the same suit and relief had as to them, if it plainly appears from the allegations of the bill that the complainant had parted with all his interest in the lands, out of which the controversy arose, such com-

plainant has no *locus standi* in a forum of equity and the bill is demurrable.

6. Where it plainly appears from the allegations of a bill in equity that the complainant has been guilty of laches in filing the same and in seeking relief, and no satisfactory reason is given for the same, such bill is demurrable.

7. While the rule as to multifariousness may, generally speaking, be said to be "one very much of convenience," and while there may not be "any positive inflexible rule as to what, in the sense of a court of equity, constitutes multifariousness, which is fatal to a suit on demurrer," yet, broadly speaking, multifariousness in a bill may be defined as "the improperly joining in one bill distinct and independent matters, and thereby confounding them." There are at least two general and distinct forms of multifariousness, one consisting in uniting in the same bill distinct and disconnected subjects, matters or causes, the other consisting in joining in the same suit, either as complainants or defendants, parties who are without a common interest in the subject of the litigation and have no connection with each other. Whenever multifariousness plainly appears in a bill it is ground for demurrer.

8. In order to maintain a bill for partition, the complainant must show title or a right to partition. Where in a partition proceeding it appears that the complainant has no title to the lands sought to be partitioned, the bill should be dismissed, even though the complainant may have an equitable interest in the land which may be enforced in proper proceedings.

This case was decided by the court En Banc.

Appeal from the Circuit Court for Hernando County.

The facts in the case are stated in the opinion of the court.

*Davant & Davant,* for Appellant;

*H. L. Anderson* and *H. M. Hampton,* for Appellees.

SHACKLEFORD, J.—On the 23rd day of July, 1908, the appellant as complainant filed his bill in chancery in the Circuit Court for Hernando County against the appellees as defendants, which, omitting the purely formal parts, is as follows:

"George B. Murrell, of Polk county, in the said State, the complainant, brings this his bill against William R. Peterson, of said Hernando county, and the Peterson-McNeill Company, a corporation organized and existing under the laws of the State of Florida, with a principal place of business in Hernando county, in the said State, and thereupon the complainant complains and says: That the complainant and the defendant, William R. Peterson, upon parol agreement between them bought in equal interests the east half of the northeast quarter of section twenty-two (22), the northwest quarter and the west half of the southeast quarter and the southwest quarter of section twenty-three (23), and the west half of the northeast quarter and the northwest quarter of section twenty-six (26), of township twenty-three (23), south of range twenty (20), in the said Hernando county situate, and containing seven hundred and twenty (720) acres, more or less, upon said agreement, and in mutual trust and confidence. and for reasons of personal convenience to them as tenants in common understood and agreed upon between them, caused the title-deed therefor to be executed to and in the name of the said defendant, William R. Peterson, as appears by the said title-deed executed by R. H. Moore and his wife and John L. Culver and his wife the twenty-fourth day of April, anno domini nineteen hundred and three, appearing of record in Hernando county aforesaid at page 631 in Book 14 from the thirteenth day of July, 1903, the complainant and the said defendant, William R. Peterson, each

paid fourteen hundred and forty dollars ($1,440.00) of the purchase money and did agree that the complainant should first enter and take possession of the said lands for use of the pine timber thereon in the prosecution of complainant's turpentine business, and the said defendant to have thereafter the right of possession of the said timber for his saw mill business; that the said complainant sold out and assigned his said turpentine business the thirteenth day of November, 1903, including his said right of possession and of title in fee to the undivided half interest in and to the said lands to Eugene M. Putnam, James L. Wells and Robert R. Emmett as co-partners under the firm name Putnam, Wells and Emmett, under agreement by and with the said defendant, the said William R. Peterson, and the said Putnam, Wells and Emmett with the complainant; that the said defendant, the said William R. Peterson, should recognize the complainant's said vendees, and to them convey the said undivided one-half interest and estate in and to the said lands, in lieu and stead of the complainant, but notwithstanding the said agreements and repeated applications to the said defendant for said conveyance, the said defendant, although admitting the said agreement on his part, on various pretexts and pretences delayed and has hitherto failed to execute and deliver his deed for the said undivided one-half interest, and by reason thereof the said Eugene M. Putnam and James L. Wells, having bought the interest of the said Robert R. Emmett in the said co-partnership of Putnam, Wells and Emmett, and continuing the said business under the firm name Putnam and Wells, brought their suit at law for the money by them paid to complainant upon his assurance of conveyance by the said defendant, the said William R. Peterson, for the said one-half interest and upon exe-

cution under judgment thereon recovered, collected sixteen hundred and thirty-five dollars and sixty-five cents from complainant.

Complainant further shows that the said defendant. William R. Peterson, disregarding the agreement aforesaid, co-operated in forming a corporate company the eighth day of February, A. D. 1905, under the name Peterson-McNeill Company for lumber and turpentine purposes, with the said William R. Peterson as the president and one E. H. McNeill as the vice-president thereof, conveyed the said lands by his warranty deed to the said Peterson-McNeill Company the tenth day of the said February, and the said company with full knowledge of the said agreements and of the rights and equities of the said several parties thereto, and especially of your orator's said rights and equities thereto, and of the said suit at law and recovery against complainant, in violation of the said rights and equities has continued to withhold the conveyance of the said half-interest, but complainant is informed and believes—and therefore alleges—has sold and by warranty deed, conveyed unto certain strangers certain parcels of the said lands, to the profit of the said company and to the wrong and damage of this complainant—all which complainant submits is contary to and is to the injury of the complainant.

To the end, therefore, that the defendants may, if they can, show why the complainant should not have relief thereby prayed, and may full, true, direct and perfect answers make, according to the best and utmost of their knowledge, remembrance, information and belief— answer under oath being hereby expressly waived—to all and singular the matters and things herein alleged, and may be compelled to repay to complainant all damage by him sustained by reason of the said suit and judgment

at law, and for the value of the turpentine rights upon the said lands, and to account with complainant for one-half the value of all such parcels of the said lands as have been conveyed as aforesaid, and that one-half of the residue of the said lands be set off to the complainant if the same be susceptible of just partition or if not so susceptible the said residue be sold under decree of this court and one-half the proceeds be paid to the complainant, and that the complainant have such other and further relief in the premises as to your Honor may seem meet."

To this bill each of the defendants interposed a demurrer upon various grounds, but we deem it unnecessary to set them forth. On the 24th day of September, 1908, the court made the following order:

"This cause came on to be heard on argument of the defendants' demurrer to the bill of complaint, and the same was argued by the solicitors for the respective parties, and the court having considered the same, is of the opinion that the allegations in the bill of the payment of one-half of the purchase price for the lands mentioned coupled with the agreement that the complainant was to have certain turpentine privileges and the defendant certain timber privileges does not state a case of a resulting trust, and the demurrer is sustained. The complainant is allowed ten days to amend his bill and if no amendment is made within the said time the bill will stand dismissed."

From this order the complainant has entered his appeal to this court.

Right at the threshold of our investigation of the points presented by this appeal we are confronted by certain legal principles which have been so repeatedly enunciated by this court that they must now be regarded as settled beyond question. One is that in a suit in equity,

as well as action at law, every pleading, when properly attacked, is to be construed most strongly against the pleader thereof; so, in passing upon a demurrer to a bill in equity, every presumption is against the bill.   See the discussion of this principle, the reasons given therefor and the authorities cited in Durham v. Edwards, 50 Fla. 495, 38 South. Rep. 926; Knight, Norman & Co. v. J. C. Turner Cypress Lumber Co., 55 Fla. 690, 45 South. Rep. 1016; Hancock v. Hancock, 55 Fla. 680, 45 South. Rep. 1020, S. C. 15 L. R. A. (N. S.) 670; King v. Hooton, 56 Fla. 805, 47 South. Rep. 394, text 398, and City of Miami v. Miami Realty, Loan & Guaranty Co., decided here at the present term.   Another one of such principles is "that where there are contradictory or inconsistent allegations in a bill, its equity will be tested by the weaker rather than by the stronger allegations."   Barco v. Doyle, 50 Fla. 488, 39 South. Rep. 103.   This is analogous to the principle that in an action at law where the allegations of a declaration containing only one count are repugnant to and inconsistent with each other, such allegations neutralize each other, and the declaration will be held bad on demurrer.   State v. Seaboard Air Line Railway, 56 Fla. 670, 47 South. Rep. 986, and Hoopes v. Crane, 56 Fla. 395, 47 South. Rep. 992.   Still another cognate principle is that a court of equity cannot grant relief when the complainant's own showing in his bill demonstrates a want of equity in his prayer.   Durham v. Edwards, 50 Fla. 495, 38 South. Rep. 926, and authorities there cited, and Godwin v. Phifer, 51 Fla. 441, text 453, 41 South. Rep. 597, text 601.

Applying these principles, it seems to us that the bill is defective in several respects.   In the first place, it affirmatively appears that the complainant had "sold out and assigned" his turpentine business, on the 13th day

of November, 1903, to Putnam, Wells & Emmett, "including his said right of possession and of title in fee to the undivided half interest in and to the said lands," and that the defendant, Wiliam R. Peterson, had agreed to recognize such vendees of complainant and convey to them such undivided one-half interest. Under this showing, what right has complainant to bring this suit, or what *locus standi* has he in a forum of equity? The fact that such defendant had failed to convey such undivided one-half interest in the lands in question to complainant's vendees, in consequence whereof such vendees recovered a judgment in an action at law against complainant and collected from him the amount thereof could not confer upon him the right to institute this suit against defendants.

We note and call attention to the point that the agreement made between complainant and defendant Peterson is expressly alleged in the bill to have been a "parol agreement," and presumably the agreement alleged to have been made between complainant and such defendant, whereby the latter was to recognize complainant's vendees and to convey the undivided one-half interest in such lands to them, was likewise parol. Interesting questions are here presented, but we pass them by, it not being necessary to discuss or decide them. One other point we wish to note in passing. It strikes us as being significant that, although the lands in question were purchased by complainant and such defendant in April, 1903, "upon parol agreement between them," by which the title thereto was taken in the name of such defendant, and although it was agreed between them that "complainant should first enter and take possession of said lands for the use of the pine timber thereon in the prosecution of complainant's turpentine business," the complainant

should have stood by and suffered the defendants to do all the different things set forth and alleged in his bill. With such matters transpiring, why should he have waited until the 23rd day of July, 1908, a period of five years since such lands were purchased, to file his bill? Assuming that complainant originally had a sufficient basis for a suit in equity against the defendant Peterson, might not the question of laches now enter in? We shall not undertake any discussion of this question now, but content ourselves with referring to what is said thereon in Geter v. Simmons, decided here at the present term,

Counsel for complainant lay such stress upon the question of a resulting trust and insist upon a reversal of the interlocutory order appealed from because the court in the order sustaining the demurrers seems to plant such ruling upon the ground that the bill "does not state a case of a resulting trust." We really fail to see wherein this question seriously enters into the case. If the demurrer should have been sustained upon any of the grounds thereof, it is wholly immaterial that the court may have given a wrong reason for a proper ruling. See Hoopes v. Crane, 56 Fla. 395, 47 South. Rep. 992, and authorities there cited; Steiner v. Parker, 108 Ala. 357, 19 South. Rep. 386; McDonald v. Pearson, 114 Ala. 630, 21 South. Rep. 534; Lamar & Rankin Drug Co. v. Jones, Ala. , 46 South. Rep. 763. As to the principles applicable to a resulting trust we would again refer to Geter v. Simmons, *supra*.

We now take up for consideration the question of multifariousness, which formed one of the grounds of the demurrers. In so doing, we fully recognize that this is a vexed question indeed and has given the different courts no end of trouble. We quote the following paragraph from the opinion of Mr. Justice PECKHAM in

Harrison v. Perea, 168 U. S. 311, text 319, 18 Sup. Ct. Rep. 129: "As to multifariousness, it was said in *Shields* v. *Thomas,* 18 How. 253, 259: 'There is, perhaps, no rule established for the conducting of equity pleadings, with reference to which (whilst as a rule it is universally admitted) there has existed less of certainty and uniformity in application, than has attended this relating to multifariousness. This effect, flowing, perhaps inevitably, from the variety of modes and degrees of right and interest entering into the transactions of life, seems to have led to a conclusion rendering the rule almost as much an exception as a rule and that conclusion is, that each case must be determined by its peculiar features. Thus Daniell, in his work on Chancery Practice, vol. 1, page 384, quoting from Lord Cottenham, says: 'It is impossible, upon the authorities, to lay down any rule or abstract proposition, as to what constitutes multifariousness, which can be made universally applicable. The cases upon the subject are extremely various, and the court, in deciding upon them, seems to have considered what was convenient in particular cases, rather than to have attempted to lay down an absolute rule.' Continuing his opinion, the learned justice in the above case said: 'Justice Story, in his compilation upon equity pleading, defines multifariousness in a bill to mean 'the improperly joining in one bill distinct and independent matters, and thereby confounding them.' * * * Justice Story closes his review of the authorities upon this defect in a bill with the following remark: 'The conclusion to which a close survey of the authorities will conduct us, seems to be, that there is not any positive inflexible rule as to what, in the sense of a court of equity, constitutes multifariousness, which is fatal to a suit on demurrer.' "

We shall not undertake any extended discussion of the matter. In determining, however, what does and what does not constitute multifariousness in a bill, the following decisions of this court will prove helpful: Ritch v. Eichelberger, 13 Fla. 169; Hargis v. Campbell, 14 Fla. 27, text 30; Keyser, Judah & Co. v. Simmons, 16 Fla. 268; Bauknight v. Sloan, 17 Fla. 284; Sanderson v. Sanderson, 17 Fla. 820, text 834; Hayden v. Thrasher, 20 Fla. 715; Thrasher v. Doig, 18 Fla. 809; Robinson v. Springfield Co., 21 Fla. 203, text 238; Deans v. Wilcoxon, 25 Fla. 980, text 1057, 7 South. Rep. 163, text 180; Brown v. Solary, 37 Fla. 102, text 115, 19 South. Rep. 161, text 164. In testing a bill upon demurrer for multifariousness, not only the allegations of the bill must be looked to but the prayer thereof as well, but "the prayer alone, not supported by averments, though it be for alternative or different or inconsistent relief, does not make the bill multifarious." Smith v. Smith, 153 Ala. 504, 45 South. Rep. 168. Also see Boutwell v. Vandiver, 123 Ala. 634, 26 South. Rep. 222, S. C. 82 Amer. St. Rep. 149, and authorities there cited. As to a prayer in the alternative for relief not of itself making the bill demurrable, see Florida Southern Ry. Co. v. Hill, 40 Fla. 1, 23 South. Rep. 566, S. C. 74 Amer. St. Rep. 124.

According to the allegations of the bill, the defendant Peterson, with whom complainant had purchased the lands in question and entered into the parol agreement concerning the same, had conveyed all of such lands to the Peterson-McNeill Company, a corporation, and the other defendant. Assuming the allegation in the bill as true that such company took the deed to the lands in question with full knowledge of the "agreements" referred to in the bill "and of the rights and equities of the said several parties," especially the rights and equities of com-

plainant, to what relief did that entitle complainant as against such defendant corporation? Turning to the prayer, we find that the relief sought by complainant is that the defendants "may be compelled to repay to complainant all damage by him sustained by reason of the said suit and judgment at law, and for the value of the turpentine rights upon the said lands, and to account with complainant for one-half the value of all such parcels of the said lands as have been conveyed as aforesaid, and that one-half of the residue of the said lands be set off to the complainant if the same be susceptible of just partition, or if not so susceptible the said residue be sold under decree of this court and one-half the proceeds be paid to the complainant, and that the complainant have such other and further relief in the premises as may seem meet."

A number of questions present themselves here, but we shall not undertake to set forth and discuss them all. Suffice it to say we fail to find any allegations in the bill upon which the defendant corporation could be required to repay complainant all damages sustained by him by reason of the recovery against him of a judgment at law, or why such defendant should be required to account to him at all as prayed. We also fail to find any sufficient allegations to entitle complainant to a partition of the lands. Since defendant, Peterson, had long since conveyed all of said lands to the defendant corporation, we do not see how a suit for a partition thereof would lie against him at all or how he could be a proper party to such suit. It has been held in some jurisdictions, and, we think, properly so, that there are at least two general and distinct forms of multifariousness. One consists in uniting in the same bill distinct and disconnected subjects, matters or causes. The other consists in joining in the same suit,

either as complainants or defendants, parties who are without a common interest in the subject of the litigation and have no connection with each other, this latter form being termed multifariousness as to parties. See 14 Ency. of Pl. & Pr. 199-200, and authorities there cited. We are of the opinion, in the light of the authorities cited, that the bill in the instant case is multifarious under each of these forms. See Ritch v. Eichelberger, 13 Fla. 169, text 189, and Bauknight v. Sloan, 17 Fla. 284, text 288.

It may be advisable to say a few words as to the legal principles governing the partition of lands. We have held in Williams v. City of St. Petersburg, decided here at the present term, that, "in order to maintain a bill for partition, the complainants must show title or a right to partition. Where in a partition proceeding it appears that the complainants have no title to the lands sought to be partitioned, the bill should be dismissed, even though the complainants may have an equitable interest in the lands which may be enforced in proper proceedings." Also see Dallam v. Sanchez, 56 Fla. 779, 47 South. Rep. 871, and authorities there cited, and Koon v. Koon, 55 Fla. 834, 46 South. Rep. 633, and authorities there cited. We are clear that the bill was well open to attack by demurrer, therefore, the order sustaining the same must be affirmed, and it is so ordered.

WHITFIELD, C. J., and TAYLOR, J., concur.

COCKRELL, J., *concurring.*—I am content to affirm the order upon the ground stated by the Circuit Judge. The earnest, if not the sole, insistence of the appellant is that the bill makes out a proper case of a resulting trust. This equity, it seems to me, is destroyed by the inconsistent agreement set up.

While the bill alleges an equal payment of the purchase money by Murrell and Peterson and that they bought in equal interests, yet it is asserted that Murrell was to have the turpentine rights and Peterson to have thereafter the right of possession of the said timber for his saw mill business." There is nothing to show that the turpentine and milling rights were considered of equal value, nor that the former may not well have been the equivalent of all other interests in the land.

While the cases decide that an invalid oral agreement will not destroy the right to a resulting trust, yet that agreement should not be wholly inconsistent with the implications the law creates from the acts of the parties.

The statute of frauds strikes down the oral agreement and to declare a resulting trust, an exact equality of division of interests in the lands purchased, would be to do what neither party contracted for and what under the circumstances would be inequitable to force upon either.

There remains but an ordinary case of breach of contract, for which the courts of law are open.

HOCKER, J., concurs;

PARKHILL, J., absent on account of illness.