STATE PLANT BOARD, A BODY CORPORATE, *et al.*, *Appel-
lants*, v. D. M. ROBERTS, *et al.*, *Appellees*.

## Opinion filed May 31, 1916.

1. Where a bill in equity is filed by several complainants, alleg-
   ing that they are nurserymen and fruit-growers severally
   owning distinct parcels of land which are described upon
   which are situated nurseries and fruit groves, and that the
   complainants' "interests are identical," against the State Plant
   Board, a body corporate, certain named individuals as mem-
   bers of and constituting such board, and certain other named
   individuals "as members of and constituting an advisory com-
   mittee acting in charge of the State Plant Board," seeking
   to compel the State Plant Board and its agents and repre-
   sentatives to modify certain rules and regulations which have
   been adopted "so as to eradicate and expunge" a certain rule
   designated "Rule 5," a copy of which is attached as an ex-
   hibit to the bill, such bill is clearly multifarious both as to
   the parties complainant and the parties defendant, and a de-
   murrer interposed thereto upon such ground is properly sus-
   tained.

2. Where a bill in equity is filed by several complainants, alleging
   that they are nurserymen and fruit-growers, against the
   State Plant Board, a body corporate, the individual members
   thereof and certain other named individuals "constituting an
   advisory committee acting in charge of" such board, seeking
   to have the court require such board "to eradicate and ex-
   punge" a certain designated rule which had been adopt-
   ed by such board, and it appears from the allegations

of the bill that the State Plant Board was created a body corporate by Chapters 6885 and 6886 of the Laws of Florida (Acts of 1915, pages 194 and 201 of Vol. 1), and the constitutionality of such chapters is not questioned, and that Section 6 of Chapter 6885 expressly provides that "The Board shall, from time to time, make rules and regulations for carrying out the provisions and requirements of this Act," etc., a court of equity would not be warranted in granting the relief prayed, the complainants' own showing demonstrating a want of equity in their prayer.

Appeal from the Circuit Court, Dade County; H. Pierre Branning, Judge.

Order reversed.

*Price & Eyles,* for Appellants;

*James T. Sanders* and *Geo. A. Worley & Son,* for Appellees.

PER CURIAM.—D. M. Roberts, J. G. Murray, E. B. Grutzbach, Arnold Dorn, John Wingate and D. A. Williams filed their bill in chancery against "the State Plant Board, a body corporate, P. K. Yonge, E. L. Wartman, T. B. King, W. D. Finlayson and F. E. Jennings, as members of and constituting the State Plant Board, and P. H. Rolfs, W. J. Krome and Lloyd S. Tenny, as members of and constituting an advisory committee acting in charge of the State Plant Board."

A demurrer was interposed to the original bill, but before any ruling was made thereon an amendment was filed to the bill, whereupon the demurrer already on file was addressed to the bill as amended. Again, prior to

any ruling upon the demurrer, the complainants filed an amendment to their bill and the defendants interposed a demurrer to the bill as it then stood, having been twice amended. This demurrer was overruled, from which interlocutory order the defendants have entered their appeal.

Very concisely stated, the bill as amended alleges that the complainants' "interests are identical," all being residents of Dade County and owners of real estate therein, the bill containing the following allegation:

"Your orators represent unto your Honor that they are engaged in agricultural pursuits and own real estate in Dade County, Florida, and the particular occupation of each of your orators is that of nurserymen and the growing of citrus nursery trees for the purpose of transplanting said nursery trees or stock into grove form for the purpose of raising orange, grapefruit and citrus groves; and that your orators own in the aggregate of such citrus stock property interests to the value of about One Hundred Twelve Thousand Dollars, all located in Dade County, Florida, and more particularly described as follows:"

Then follow descriptions of the respective parcels of real estate owned by the different complainants individually upon which their nurseries and groves are situated. The bill then proceeds to allege that about two and a half years previously there had come into the County of Dade and other counties in the State a certain bacterial disease commonly called Citrus Canker which spread for a time among the citrus trees and greatly damaged the citrus fruit industry and caused the enactment by the Legislature of the State of Florida of Chapters 6885 and 6886 of the Laws of Florida, (Acts of 1915, pages 194 and 201 of Vol. 1), for the prevention of such disease.

It is further alleged that under the provisions of such Chapters there was created a body corporate designated as the State Plant Board, which proceeded to take charge of the situation and to make certain rules and regulations, among others being Rule 5, which is as follows:

"Rule 5. Every grove, nursery or separate plant, situated in the State of Florida which is, has been or shall become affected with citrus canker is hereby declared to be the center of an infected and dangerous zone, which zone shall extend for a mile in every direction from said center and within which center and zone all trees, plants or nursery stock are declared to be plants likely to carry and disseminate citrus canker. The planting or movement of citrus plants within such zone is hereby prohibited until such time as in the judgment of the Board such dangerous conditions may have ceased to exist. No certificate shall be issued for the movement of nursery stock from a nursery outside of such zone in which vehicles, teams, laborers or other persons, nursery implements or other things enter, that likewise enter or are used in any nursery or grove infected with citrus canker."

The bill then proceeds to allege and specify wherein such Rule 5 is discriminative, burdensome and oppressive and results in great detriment to the complainants, and that, although they have made repeated applications to such State Plant Board to amend its rules so as to afford the complainants appropriate and necessary relief, which such State Plant Board has failed and refused to grant.

The specific relief prayed for is as follows:

"1. That by an order and decree of this honorable court that the said State Plant Board and its agents and representatives be compelled to modify said rules and regulations so as to eradicate and expunge said Rule 5, as

noted in Exhibit 'A,' and to permit orators and their agents to sell, transport, transplant and remove citrus stock from uninfected nurseries and from nurseries that have not shown infections in the properties that are uninfected and that said Plant Board by the decree of this court be compelled under reasonable regulations to grant certificates authorizing orators and their agents to sell, dispose, transplant and transport their said nursery stock as if no such mile zone had previously existed, and that the said Plant Board and its agents and representatives be restrained and enjoined from further enforcing the said oppressive Rule 5, as set forth in Exhibit 'A' herewith.

2. And your orators further pray that in case of citrus canker infection being discovered at any future period, if same is within one mile of either of your orators' properties, that reasonable notice be served upon such one of your orators as may be within one mile of said property, advising orator of the location of said infection and that orator be permitted under certain restrictions to examine and satisfy himself as to the correctness of the diagnosis of the suspected citrus canker infection before said plant or tree shall be destroyed and that the said Plant Board and its agents be restrained and enjoined from destroying any citrus tree until after such notice shall have been given, and that the owner of said tree shall likewise be notified either in person or by his agent, provided he is a resident of the locality in which said infection is alleged to exist and that orators may have such other and further relief as equity may require and to this court shall seem meet and just."

The bill as amended is somewhat lengthy and has a number of exhibits attached thereto, but we think that we have set forth the same sufficiently for a proper un-

derstanding of this opinion.  The demurrer interposed thereto contains twenty-five "matters of law and points to be argued" in support thereof, but we deem it unnecessary to set them forth.

We are of the opinion that the bill is clearly multifarious both as to the parties complainant and the parties defendant.  See Murrell v. Peterson, 57 Fla. 480, 49 South. Rep. 31, and prior decisions of this court there cited.  We would also refer to Arcadia Mercantile Co. v. Branning, 59 Fla. 428, 52 South. Rep. 588, and Carlton v. Hilliard, 64 Fla. 228, 60 South. Rep. 220.  Even if we could pass this question of multifariousness as to the parties, we are further of opinion that the bill fails to make or state any case for equitable relief.  The constitutionality of Chapters 6885 and 6886 is not questioned. Section 6 of Chapter 6885 expressly provides:  "The Board shall, from time to time, make rules and regulations for carrying out the provisions and requirements of this Act, including rules and regulations under which its inspectors and other employes shall (a) inspect places, plants and plant products, and things and substances used or connected therewith, (b) investigate, control, eradicate and prevent the dissemination of insect pests and diseases, and (c) supervise or cause the treatment, cutting and destruction of plants and plant products infected therewith.  The inspectors and  employees employed by the Board shall have authority to carry out and execute the regulations and orders of the said Board and shall have authority under direction of the Board to carry out the provisions of this Act."

We think that the bill fails to show that the State Plant Board exceeded its authority in making such rule. This being true, a court of equity would not be warranted in requiring such Board "to eradicate and ex-

punge said Rule 5," as prayed.   As we have several times held, "A court of equity cannot grant relief when the complainant's own showing in his bill demonstrates a want of equity in his prayer."   Durham v. Edwards, 50 Fla. 495, 38 South. Rep. 926.

It follows that the interlocutory order appealed from must be reversed, with directions to sustain the demurrer to the bill.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL, WHITFIELD and ELLIS, JJ., concur.