ROYAL PALM REALTY COMPANY, a Florida corporation, *Appellant,* v. M. E. GRUBER, *Appellee.*

Division A.

Opinion filed April 2, 1930.

Petition for rehearing denied April 29, 1930.

*Van C. Swearingen,* for Appellant;

*Kearley, Fisher, VanMetre & Chapman* for Appellee.

ELLIS, J.—This is an appeal from an order sustaining demurrers to original and amended bills of complaint exhibited by the Royal Palm Realty Company against M. E. Gruber in the Circuit Court for Palm Beach County.

The appellant, a Florida corporation, sought by its bill to declare a certain deed of conveyance executed by its president in the name of the corporation to M. E. Gruber to be a deed of trust for the corporation's benefit and to require a conveyance back by the so-called trustee to the corporation of the lands described, for an accounting and general relief.

The original bill was filed in May, 1926. According to its allegations and those of the amended bill, the corporation agreed in writing with M. E. Gruber in May, 1921,

to purchase from the latter about one hundred and twenty acres of land and promised to pay therefor $360,000 of which according to the agreement $15,000 was paid when the contract was signed, $10,000 to be paid on or before June 1, 1921, $25,000 on or before November 1st of that year, $50,000 on or before March 1, 1922, and the remainder ,in fifty thousand dollar payments every six months thereafter except the last payment which was to be in the sum of $60,000 on or before September 1, 1924.

The corporation then entered into possession of the land and caused it to be platted into lots and blocks and named the same "Flamingo Park" and caused a plat of the same to be placed on record. When that was done the parties entered into what is called a trust agreement on the 27th day of June, 1921, about two months and twenty-two days subsequently to the date of the first agreement by which subsequent agreement the first, as was intended by the parties, was superseded and displaced.

It was agreed that the same land was to be conveyed to the corporation except three lots in "Flamingo Park," for the same consideration of which the receipt of $12,-881.04 was acknowledged, the remainder to be paid in the same installments on the same dates as provided in the first agreement except that the first deferred payment was to be made on November 1, 1921, in the sum of $37,-118.96. Gruber, having already received fifteen thousand dollars under the first agreement, was to receive the same price for the land under the second and three lots in "Flamingo Park," at least the language of the bill and exhibits upon that point unexplained are susceptible of such interpretation.

The terms of the latter agreement were very complete. Provision was made for the conveyance of lots from time to time according to a schedule of prices for lots; for the

transfer by the corporation to the Farmer's Bank and Trust Company, as Trustee, of every contract for the sale of lots, which Bank as Trustee should collect the money due upon the contracts and pay it out in accordance with the terms of the agreement which included the payment of certain creditors of the corporation such as engineering and construction companies and the placing in a "release fund" of moneys left over after paying the creditors; provision was made for a certain "development" of a portion of "Flamingo Park" within a definite time, to pay all taxes before December of every year. The contract provided that if the corporation failed to pay taxes or to make any payments to the seller which should become due or to perform any of the provisions of the agreement undertaken by it the seller could at his option terminate it and the corporation should forfeit all payments. The agreement contained other provisions which are unnecessary to mention.

The enterprise was clearly what may be termed a "Subdivision of Land Promotion." The corporation spent about one hundred thousand dollars in improvements upon the property. It is alleged that the corporation also paid Gruber about one hundred thousand dollars upon the purchase price of the land and then became financially unable "to meet its obligations and payments to the defendant at the dates the same became due under said contract." Thereupon Gruber applied to the court for a receiver for the corporation, which it was alleged was done for the purpose of "forcing the complainant to make such settlement with the defendant that he would re-acquire the land without paying back to the complainant the money he had received as part of the purchase price or paying the complainant for the improvements it had made upon said land." From which it may be inferred under

the demurrer that Gruber had availed himself of that provision of the agreement authorizing him to terminate the agreement and retain all payments as liquidated damages upon the corporation's failure to make the stipulated payments.

The application for a receiver was made on March 7, 1922, six days after the second deferred payment of fifty thousand dollars became due under the second agreement.

It is alleged that the corporation purchaser had become financially involved as early as January 2, 1922, at which time another President was elected named W. M. Huber, who succeeded H. F. Koch in that position. Yet, it appears that the second agreement dated June 27, 1921, was executed by W. M. Huber as president for the corporation and Mr. Koch attested it as secretary.

It is alleged that Huber, as president, between January 2, 1922, and February 8th of that year entered into negotiations with Gruber for a "settlement or adjustment with the defendant whereby the time for payments for the purchase of the said land could be extended and the debts of the Company could be paid"; that on February 8, 1922, the president of the corporation was authorized by the board of directors to negotiate with Gruber, the defendant, for the sale, transfer and assignment of all the assets of the complainant corporation to the defendant" and the "assumption and liquidation" by him of all the corporation's obligations. It is alleged that the negotiations were to have been reported to the Directors for ratification and authority was withheld from the President to conclude the transactions.

Now all this occurred prior to the application for and appointment of a Receiver.

It is alleged that while the corporation was in the hands of a Receiver appointed upon the application of the

defendant Gruber, the President and he completed the negotiations and effected the exchange of properties and executed the deeds mentioned in the bill all of which it is alleged were of no binding force upon the corporation because its president was without authority to enter into such agreements in its name. It is alleged that so soon as the corporation learned of the transactions brought its bill for the relief sought.

The original bill was filed in May, 1926, more than four years after the settlement with the defendant, during all of which time he under the agreement of settlement and compromise assumed management and control of the properties and the activities of the corporation ceased.

A general demurrer to the original and amended bills for want of equity, that the complainant was guilty of laches and that there was apparently a ratification and confirmation by the corporation of the transaction or negotiation of settlement with the defendant was interposed.

As stated the demurrers were sustained and the bill was dismissed from which decree this appeal was taken.

The demurrer was properly sustained and there appears to be no error in the chancellor's ruling.

From anything in the bill appearing to the contrary, the corporation was in default and the defendant had availed himself of his rights under the terms of the agreement to terminate it, retain the payments made and proceed to a liquidation of the affairs of the complainant. To that end he had begun his suit in a court of equity and had obtained the appointment of a receiver. The Bank and Trust Company, which was the trustee under the second agreement, was named as receiver and the business and affairs of the corporation taken over and managed by the court agency. At this point the defendant

made the settlement with the corporation's president and himself took over the properties the title to which he already had and proceeded with the business which the corporation had failed to carry on. This condition of things lasted for more than four years before the corporation took any action to review the transactions.

It makes no offer in either bill to pay the debts it owes to the defendant under the agreement, to reimburse him for all expenses to which he has been subjected if any, and to place him in that position to which he is entitled if the agreement had been carried out by the complainant.

Here is a case of long acquiescence by the complainant in a condition of affairs of which it now complains and which it could not at an earlier time prevent without complying or offering to comply with the agreements on its part to be observed under the second contract. See Anderson v. Northrop, 30 Fla. 612, 12 So. R. 318; King v. Dekle, 53 Fla. 940, 43 So. R. 586; Murrell v. Peterson, 57 Fla. 480, 49 So. R. 31; Geter v. Simmons, 57 Fla. 423, 49 So. R. 131.

Notwithstanding the allegations of the bill as to when the corporation became aware of the negotiations by its president with the defendant, the negotiations were of such nature and the activities of the defendant in relation to the property so evident—the enterprise constituting the corporation's entire business and purpose for existence and the fact that its president when the bill was brought was its secretary when the negotiations were made—that the conviction forces itself upon one that the corporation had ample time to become advised of the transaction and pursue its remedy, if it had any, for the establishment of its alleged rights.

Taking the bill in its entirety as containing a history of the transaction out of which the complainant asserts its

rights arose it presents a case destitute of good faith and reasonable diligence upon its part and under well settled rules a court of equity will not render any aid.

The decrees are affirmed.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.