GARLAND RICHARDSON, *et al.,* v. GEORGE H. BALDWIN, *et al.*

168 So. 255.
Opinion Filed May 5, 1936.

234

*Ernest P. Roberts* and *Ernest E. Roberts,* for Appellants;

*Cary D. Landis,* Attorney General, .and *William H. Malone,* for Appellees.

TERRELL, J.—By Chapter 12291, Acts of 1927, Section 3630, *et seq.,* Compiled General Laws, the Legislature created the State Plant Board and defined its powers and duties.  As to its duties it is required to make investigations and prevent the introduction of, control, and spread of insect pests and plant diseases.  Pursuant to the power vested in it the State Plant Board made an investigation in 1934 and found an insect pest known as the spiney-citrus white fly or black fly on citrus trees in the City of Key West.  It thereupon took steps to eradicate said pest and declared a quarantine in the City of Key West and contiguous territory more particularly described in the bill of complaint.

After making its investigation and finding said insect pest to exist the Board adopted rules and regulations for its extermination, that is to say Rules 6-B, 6-C, and 6-D, and declared a quarantine to control its further dissemination. It then through its agents and employees took steps to enforce said rules and quarantine.  Thereupon the appellants, who were defendants below, refused to permit the agents, officers, and employees of the State Plant Board to enter their premises and take such steps as were necessary to eradicate said pests.

The State Plant Board then filed its bill of complaint praying that defendants or any persons connected with or representing them be restrained and enjoined from interfering with, preventing, or otherwise obstructing or refus-

ing to permit the State Plant Board, its agents, or employees, from entering any premises, owned, occupied or in the control of them, for the purpose of spraying or otherwise treating any bushes, shrubbery, or plants located on the premises owned or occupied by them within the said quarantine area for the purpose of eradicating plant pests and for the prevention of the dissemination thereof in accordance with the rules of the State Plant Board and in accordance with instructions of the State Plant Board to its Plant Commissioner and for such other relief as to the Court may seem right and just. A motion to dismiss and an answer were filed and on final hearing the relief prayed for was granted. This appeal is from both the final decree and the order denying the motion to dismiss.

It is first contended that the Legislature exceeded its authority in enacting Chapter 12291, Acts of 1927, creating the State Plant Board and defining its powers and duties.

It is settled law that the Legislature cannot delegate the power to make a law or to declare what the law is or to exercise an unlimited discretion in applying the law. It may enact a law complete in itself to accomplish a public purpose and may authorize designated officers within defined limitations to prescribe rules and regulations for its enforcement. Such laws are upheld on the theory that the power to make rules is not exclusively legislative but essentially administrative and necessary to the complete administration of the law. Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789; State Plant Board v. Roberts, 71 Fla. 663, 72 So. 175; Butterfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; United States v. Crimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563.

Chapter 12291, Acts of 1927, Section 3830, *et seq.,* Compiled General Laws, authorizes the State Plant Board to

employ agents and to inspect plants, plant products, or other substances that may in their opinion be capable of carrying insect pests or diseases and for that purpose they are authorized to enter the premises of anyone and inspect any bundle, package, or container thought to contain plants or plant products or other objects thought to contain or be carrying insect pests or diseases.

The State Plant Board is also authorized to investigate methods of control, eradication, and prevention of the dissemination of insect pests and diseases and for this purpose may employ agents and lease or purchase such land as they need for that purpose. It may also supervise or cause the treatment, cutting, and destruction of plants when necessary to prevent or control the dissemination of insect pests and diseases or to eradicate them. In the execution of these powers and these only the Board is authorized to prescribe and enforce all necessary rules and regulations.

All persons owning or having plants, plant products, or other materials in their possession likely to carry insect pests and diseases are required by the Act to permit them to be inspected and to furnish full information as to the origin and source of said pests or diseases. After the State Plant Board has made the investigation if it finds a dangerous insect pest or disease to exist it may so announce and it may declare a quarantine against any area, place, nursery, grove, orchard, county, or counties within the state, or against other states or foreign countries, and prohibit the movement within this state or any part thereof of all plants, plant products, or other objects from such quarantine places which are likely to carry dangerous insect pests or diseases. Such quarantine may be made absolute or it may be limited in such manner by rule and regulation as the Board may deem advisable.

The state is authorized to enact laws to foster and protect the horticultural, agricultural, and other industries, and to confer authority on administrative officers to make rules and regulations to enforce them. Bailey v. Van Pelt, *supra;* United States v. Grimaud, *supra;* Whitaker v. Parsons, 80 Fla. 352, 86 So. 247; Cazort v. State, 130 Ark. 453, 198 S. W. 103; Rowland v. Morris, 152 Ga. 842, 111 S. E. 389; Bishop v. State, 122 Tenn. 729, 127 S. W. 698; Mulkey v. State, 83 Tex. Cr. 1, 201 S. W. 991.

The Act complained of is well within this rule, the rule making power of the State Plant Board is limited to the making of rules and regulations necessary to the enforcement of the Act, and there is no showing here that it has exceeded the power vested in it either in making or enforcing its rules which were promulgated on a factual finding after thorough examination. The Act authorizes the State Plant Board to enforce its provisions as well as the rules and regulations made in pursuance of it by writs of injunction, as well as by criminal proceedings and the Legislature was authorized to confer such power on it.

It is next contended that this suit was brought by the members of the State Plant Board individually and not in the name of the members of the State Plant Board as such.

This contention is without merit. The title of the case recites the names of the parties complainant and then states that they are "members of the State Plant Board and constituting the State Plant Board of Florida, a corporation organized and existing under the laws of the State of Florida." In the first paragraph of the bill of complaint it is in terms alleged that each person is a member of the State Plant Board and "that all of said members have been duly appointed as members of the State Plant Board of Florida and constitute a body corporate under Chapter

12291, Laws of Florida." Such allegations were ample for a governmental agency to identify itself as a party complainant to a cause.

It is next contended that the bill of complaint is defective in that it does not allege that prior to or at the time the suit was brought the trees of defendants were infested or subject to infestation by the white fly.

The bill shows that during the year 1934 it was reported to the State Plant Board that a plant insect existed in the City of Key West, that the said Board through its plant commissioner and entomologist made a thorough investigation of said report and found it to be well founded, that based on its investigation the State Plant Board adopted rules and regulations for the eradication of said plant pests and for the quarantining of the area in which said pests existed and issued instructions to its plant commissioner to apply to all plants and trees (naming them) infested or likely to be infested a contact of oil insecticide "as recommended by the Bureau of Entomology and Plant Quarantine, United States Department of Agriculture, such spray materials to be applied at intervals of not less than three or more than twelve weeks and for such time as the Board may determine to be necessary."

The bill also alleged as to each defendant the place of his residence, that such residence was within the quarantine area, and that he refused to permit the "agents, officers, and employees to enter said premises and to spray trees, bushes, shrubbery, and other plants, which were then and there growing on said premises with the spray materials prescribed by the State Pant Board for the eradication of said pests and for the preventing of the dissemination thereof."

The allegations of the bill were ample. The quarantine

area was determined by a finding of fact and it was not necessary to allege the infestation of each tree or shrub within that area. To require such particularity of allegation would defeat the purpose of the Act. The final decree restrained the defendants and each of them from interfering with or preventing the State Plant Board or its agents and employees from entering into any premises owned or occupied or over which they exercise control and from spraying or otherwise treating any trees, bushes, shrubbery, and other plants located on said premises within the quarantine area. It also designated the time the injunction was to remain in effect and the formula to be used for spraying or treating.

It is contended that under such an order the State Plant Board could constitute itself a roving commission and enter defendants' premises at any time of the day or night in violation of their rights and declare any kind of an insect pest a nuisance.

The Act in terms limits the insect pests that may be declared a nuisance to those that are "dangerous" and the State Plant Board can only resort to those means essential to exterminate them or prevent their dissemination. It is true that the effect of the injunctive order is to permit the State Plant Board to exercise an authority in the nature of a protectorate over the premises in the quarantine area for the purpose of exterminating dangerous insect pests but it is not shown or suggested that it is exercising or attempting to exercise its authority in an arbitrary or unreasonable manner.

Administrative officers may be required to exercise the authority vested in them in a reasonable and lawful manner out of deference to personal and property rights but in the absence of any showing to that effect this Court will not

assume that they will conduct themselves as trespassers in the performance of their duties, neither will we assume that their employees will don their overalls in the dead of night and molest the owners in their zeal to exterminate dangerous insect pests. Government employment does not act that way. The odds would indicate that it conduces to pomposity and arrogance more often than it does to sagacity and diligence.

Administrative officers must necessarily be given some latitude in the administration of an Act of this character. The paramount consideration is saving the industry threatened and so long as the Act is administered with this purpose in view and with due respect to individual rights the officers whose duty it is made to execute it will not be interfered with. Like constitutional guarantees, such Acts must be administered with reference to the public as well as the individual and when these interests run counter that of the individual must give way. The injunctive order is in response to the allegations and prayer of the bill. It defines the formula for the spray and designates the time and period in which the spraying is to be done. No reason is shown for requiring its modification.

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, BROWN, and BUFORD, J. J., concur.

DAVIS, J., dissents.