143 So.2d 867 (1962)
Richard L. LEWIS, Individually and As President of the Florida Pest Control Association, a Florida Corporation, Appellant,
v.
FLORIDA STATE BOARD OF HEALTH, a Body Politic and Agency Existing under the Laws of the State of Florida, Appellee.
No. D-56.
District Court of Appeal of Florida. First District.
June 21, 1962.
Rehearing Denied September 18, 1962.
*868 Herbert D. Sikes and James H. Dixon, Jr., Jacksonville, for appellant.
Carlton Maddox and Bjarne B. Anderson, Jr., Jacksonville, for appellee.
RAWLS, Judge.
On June 19, 1960, the State Board of Health adopted regulations governing commercial spraying of lawns and ornamental shrubbery in residential areas with highly toxic pesticides. Plaintiff in the instant cause filed a second amended complaint praying for an injunction on the grounds that said regulations are invalid and unconstitutional as an unlawful attempt to regulate under the police power of the state, and on the further ground that said regulations are invalid as being vague, indefinite, unreasonable, arbitrary, capricious, and in violation of the due process clause of the federal and state constitutions.
From a decree entered by the Chancellor dismissing the complaint and finding that said regulations were lawfully promulgated *869 within the powers delegated to the State Board of Health and that same are not unreasonable and arbitrary, plaintiff has entered this appeal.
The first requirement is to examine the authority that has been asserted by the State Board of Health as a basis for enacting the rules and regulations being considered. Seemingly, the State Board of Health and the Chancellor were greatly impressed by the constitutional provision providing for the State Board of Health, viz.:[1]
"That the State Board of Health shall have supervision of all matters relating to public health, as may be prescribed by law." [Emphasis supplied.]
It is elementary that a constitutional provision may be self-executing which requires no legislative action to put its terms into operation, or it may not be self-executing in which case legislative action is required to make it operative.[2] The phrase "provided by law" means a legislative enactment upon the specific subject matter  not a self-endowed rule legislated by the enforcement agency. However, assuming that such constitutional provision provides some basis for supporting the State Board of Health's arrogation of legislative powers, such assumption should be examined in light of the Supreme Court's enunciation in Barrow v. Holland.[3] That case dealt with the Game and Fresh Water Fish Commission's attempt to reach out and regulate traveling shows, zoos, or wild life exhibits. Bear in mind that this is the most powerful administrative agency in the State of Florida possessing constitutional authority[4] to enact its own laws (which power is glaringly absent in the above provision pertaining to the State Board of Health) and for enforcement of same. In holding that the regulation of such exhibits through rules promulgated by the Game and Fresh Water Fish Commission was beyond its power, Mr. Justice Thornal stated on page 752:
"An agency of government having the power to regulate is not permitted to arrogate to itself or to delegate to its employees the arbitrary power to determine private rights with an unbridled discretion. North Bay Village v. Blackwell, Fla. 1956, 88 So.2d 524; Mayer v. Dade County, Fla. 1955, 82 So.2d 513; Drexel et al. v. City of Miami Beach, Fla. 1953, 64 So.2d 317; Robbins v. Webb's Cut Rate Drug Co., 1944, 153 Fla. 822, 16 So.2d 121; Florida Power Corp. v. Pinellas Utility Board, Fla. 1949, 40 So.2d 350."
It is elementary that the constitutional provision mentioning the State Board of Health is not self-executing, and does not bestow upon the State Board of Health any powers until and unless the Legislature of Florida decides that this field is one needing regulation. This premise is especially true in following the established rule of constitutional construction that all of the provisions of the constitution bearing upon a particular subject matter must be construed in pari materia, and in such construction reference is made to Article III, Section 1, of the Constitution of Florida which provides: "The Legislative authority of this State shall be vested in a Senate and a House of Representatives, which shall be designated. The Legislature of the State of Florida * * *."
We now analyze the Board's assertion and the Chancellor's finding that the legislature has spoken upon this subject matter in Section 381.031, Florida Statutes, F.S.A. *870 This section provides for the duties and powers of the Board beginning with subsection (g) as follows:
"(1) It shall be the duty of the board to: * * *
"(g) Adopt, promulgate, repeal and amend rules and regulations consistent with law regulating;
"1. Control of communicable diseases;
"2. Prevention and control of * * nuisances;
"3. Sanitary practices * * *
"4. Control of arthropods * * *
"5. Prescribe qualifications of operators of milk plants * * *
"6. Segregation, quarantine * * of all animals * * *
"7. The pollution of the air * * *
"8. Nursing Homes;
"9. Practice of midwifery;
"10. Bedding inspection;
"11. Disposal of dead bodies;
"12. Execution of any other purpose or intent of the laws enacted for the protection of the public health of Florida." [Emphasis supplied.]
A reading of the foregoing excerpts of the statute relied upon as authority for the action of the State Board of Health readily reveals eleven specific enumerated subject matters dealing with the health of this state, the regulation of which is vested in the Board. It is the twelfth item upon which the Board and the Chancellor rely upon as a legislative grant of authority for the Board to regulate this new field of operation. To give such a broad meaning to this subsection could open the door for the State Board of Health to enact rules and regulations on every aspect of the life and property of private citizens under the guise "for the protection of the public health of Florida." Our sentiments are those stated in State v. Stein[5] wherein Chief Justice Waite of the Supreme Court of the United States is quoted:
"This power of regulation is a power of government continuing in its nature, and that if it can be bartered away at all, it can only be by words of positive grant, or something which is in law equivalent."
Next it is necessary to examine the regulations which encompass some nine pages of single spaced printed matter. It would be easier to comprehend the extent of this legislative enactment by the Florida State Board of Health if the regulations were set out in full. However, for the sake of brevity, an analysis of the regulations is set out.
The title of the document is: "Regulations Governing Commercial Spraying of Lawns and Ornamental Shrubbery in Residential Areas with Highly Toxic Pesticides."
093.1 Short Title
093.2 Authority and Purpose  These regulations are promulgated by the Board under the authority of 381.031(1) (g) (12), Florida Statutes.
093.3 Definitions
(a) Pest  Enumerates pests and "* * * or which may be declared to be a pest by the Commissioner or the Board."
(b) Pesticide

(c) "Restricted Use Pesticide  Any pesticide so designated in a list prepared and published periodically by the Board, after consulting with the advisory council and after public hearing, or upon listing of such pesticide *871 by the Commissioner of Agriculture in his department's Technical Rules and Regulations promulgated under the authority of Chapter 487, Florida Statutes, governing the sale, manufacture, and transportation of pesticides under the Pesticide Act."
(d) "Prohibited Use Pesticide  Any pesticide so designated by the Board in a list to be separate from, but appended to, the afore-mentioned list of restricted use pesticides. A prohibited use pesticide is a pesticide which, in the judgment of the Board, is so dangerous to human life that its use in a residential area cannot be permitted under any circumstances, or a pesticide so classified by the Board, after consulting with the advisory council and after public hearing."
(e) Lawn

(f) Ornamental

(g) "Residential Area  Any outdoor area having a radius of 100 yards or less, wherein there are three or more structures in which people live or congregate."
(h) "Residential Pesticide Spraying  The Commercial or custom application of a restricted use pesticide to a lawn or an ornamental within a residential area."
(i) "Permit Holder  A person who has been issued, and possesses, a current valid permit as provided for, and required to engage in residential pesticide spraying, and including business owners, partners, etc., who engage in spraying operations."
(j) "Board  Florida State Board of Health."
(k) "Person  An individual, agent, association, partnership, or corporation."
(l) "Certificate Employer  Any person personally engaged in the business of residential pesticide spraying or employing therefor one or more permit holders."
(m) "Commissioner  Means the Commissioner of Agriculture."
093.4 Technical Standards  Restricted Use and Prohibited Use Pesticides

"Generally, the list of restricted use pesticides and prohibited use pesticides will include pesticides found to be highly toxic to man according to the standards enumerated below (but not limited thereto); provided however, that certain common materials which have been in use for a long time without harmful effects may, at the discretion of the Board, be exempt from this definition; and, provided further, that the Board, upon application and after opportunity for hearing, may exempt any pesticide which meets the standard of toxicity set out below but which is not, in fact, highly toxic to man."
(a) Defines restricted use of pesticides.
(b) "Those pesticides which may be prohibited or restricted in use by recommendation of the Technical Committee authorized under the Pesticide Act, Chapter 487, Florida Statutes, adopted by the Commissioner or declared by the Commissioner as highly toxic to man, and thereafter adopted by the Board."
(c) Pesticides classified by the Board to protect the public health.
093.5 Employer's Certificate Number: Applications

(a) Requires every person engaged in the business of residential pesticide spraying to procure an employer's certificate number for continuance of the certificate until suspended or revoked.
(b) "The certificate number is not transferable."

*872 (c) Requires employer's certificate number to be placed on all motor vehicles and trailers.
(1) Requires motor vehicles utilized for soliciting residential pesticide spraying to bear "R.P.S." and certificate number of the certified operator.
(2) Provides for structural pest control licensees to add the employer's certificate number to their vehicles.
(d) Requires a new employee to register and be approved by the Board and provides for revocation of the employer's certificate for violations by an employee.
(e) Requires employer to take up permit when permit holder is separated from his employment.
(f) "The Board shall keep a current record containing the name and permit number of all employees employed by each certificated employer."
(g) "The certificated employer shall be responsible for all residential pesticide spraying activities and operations performed under his certificate number."
(h) "In the event of death of the certificated employer, loss of certificated employer, or other emergency requiring a certificated employer, written notice shall be given by an individual connected with the business or company, to the State Board of Health within ten (10) days, and a new certificated employer shall be obtained through examination within thirty (30) days." [sic]
093.6 Permits and Applications

(a) "No person shall engage in residential pesticide spraying unless he has obtained a permit therefor in accordance with this section."
(b) "All certificated employers shall automatically be issued a permit by submitting the certificated employer's application form. All other permit holders shall obtain a permit from the Board by applying through the certificated employer on a permit application form to be furnished by the Board. Each permit shall expire and be renewed on or before the first day of April of each year.
"Every applicant applying for a permit, through the certificated employer, shall be at least eighteen (18) years of age, a resident of the State of Florida, must be of good character and good reputation, must be able to read and write sufficiently well to read and understand laws and regulations which govern this activity, and shall satisfy the Board in a manner to be designated by it in the application form, that he is capable of safely handling and applying pesticides in residential areas." [Emphasis supplied.]
(c) Requires carrying a permit from the Board by anyone engaged in spraying operations.
(d) "The permit is not transferable."
(e) Cancels permit when holder terminates his employment and requires procurement of a new permit if employed again in this activity.
(f) Describes contents of permit.
093.7 Revocation, Suspension: Procedure

(a) "If a permit holder fails or refuses to comply with these regulations or any part thereof, or with any lawful order of the Board or its officers, the State Health Officer may suspend or revoke his permit, refuse to renew his permit, or refuse to issue a permit for new employment, whichever is commensurate with the circumstances."
(b) "If a certificated employer fails or refuses to comply with these regulations *873 or any part thereof, or with a lawful order of the Board of [sic] its officers, or if a permit holder employed by a certificated employer fails or refuses to so comply, the State Health Officer may suspend or revoke the certificate number of the employer."
(c) Establishes a procedure for State Health Officer or his duly authorized representative in case of suspension, revocation, or other disciplinary action against permit holder or employer. Provides for a hearing.
(d) Reduction of finding of fact and conclusion of law within five days by State Health Officer.
(e) "The State Health Officer, for good cause, may extend the time provided herein during which a hearing must be requested, or within which his Notice of Decision must be rendered. Prompt notification of each extension must be given to all parties, in writing."
093.8 Structural Pest Control Firms Licensed Under the Florida Structural Pest Control Act (Chapter 482, Florida Statutes)

"Structural pest control firms licensed under Chapter 482, Florida Statutes, shall be governed by these regulations when engaged in residential pesticide spraying and their personnel shall comply with provisions of these regulations concerning applications and permits before becoming so engaged."
093.9 Exemptions  "There will be no exceptions to these regulations. All individuals, partnerships, associations, corporations, and all governmental agencies using restricted use pesticides will be required to obtain an appropriate certificate or permit from the Board."
093.10 Certain Pesticides Prohibited in Residential Areas by Any Person  "Prohibited use pesticides shall not be used or applied in any manner on lawns or ornamentals in residential areas by any person."
093.11 Labels, Precautions and Antidotes

093.12 Pesticide Application Techniques  Details techniques for application of pesticides together with amount of concentrates to be used.
093.13 Warning Notices to Home Owner or Occupant  Itemizes type and locations of warning, notice for posting where pesticides are being used.
093.14 Warning to Neighboring Occupants  Requires warning substantially as in 093.13, to be given to occupants of all building within 50 feet of area to be sprayed.
093.15 Personal Protection

(a) Sets out protective clothing to be worn by permit holders and requirements for laundering of same.
(b) Requires permit holders to take a bath each night after a day's spraying, to keep on hand a supply of clean towels, soap and detergent, and to wash hands and face after each spraying operation.
(c) "Separate compartment or box shall be furnished to store all restricted use pesticides."
093.16 Disposition of Empty Pesticide Containers

093.17 Prohibits giving away restricted use pesticides except to a permit holder or certificated employer.
093.18 Grandfather Clause  "All persons who can show documentary proof that they were actively engaged as an owner and/or operator in the business of residential pesticide spraying, are twenty-one (21) years of age, citizens of Florida, able to read and *874 write, understand the use and dangers of restricted use pesticides on the date on which these regulations become effective as prescribed by law, shall be issued employer's certificates or permits, as the case may be, upon proper written application therefor, without examination. All other applicants shall, in addition to all other requirements, be required to take and satisfactorily complete a true and false qualifying examination prepared by the Board and given periodically in the several county health unit offices, after announcement. The examination paper will be graded by the Board, by an officer designated by it for that purpose. All applicants seeking benefits of this provision must, upon demand, present proof satisfactory to the Board, that they were engaged in business on the effective date of these regulations." [Emphasis supplied.]
093.19 Prescribes procedure for notice of public hearing prior to changing rules and regulations.
093.20 "The State Board of Health Advisory Council, consisting of seven discreet and public-spirited citizens of this State, shall be as follows:
"(a) Permanent Appointees  The director of the Agricultural Experimental Station, or his designated representatives shall serve as permanent appointees.
"(b) Appointees for four (4) year period  One member each, upon recommendation of the respective organizations, shall be appointed by the State Health Officer from the Florida Medical Society, Florida Pest Control Association, Florida Turf Grass Association, the pesticide formulating industry of Florida, and a representative of a statewide organization representing commercial lawn and ornamental sprayers, and such other members as the State Health Officer deems advisable; except that initial appointments shall be for a one (1) year period for the Florida Medical Society; two (2) years for the Florida Turf Grass Association; and three (3) years for the representative of the pesticide formulating industry. All subsequent appointments from these groups shall be for a four (4) year period, unless the appointment is for the remainder of an unexpired term.
"The Advisory council shall, when called upon, consult with and be consulted by the Board on matters of policy, administration, procedures, rules and regulations to be promulgated, and any other matter pertaining to the efficient and effective carrying out of the purposes of this regulation. The members of the advisory counsil shall receive no compensation for their services, but shall be paid their necessary expenses incurred in connection with the discharge of their duties."
093.21 "Administrative Rules Adopted  To promote uniformity of administration and enforcement of laws and regulations within the authority of the Board.
"(a) State Health Officer Executive Officer of Board  The State Health Officer, as the executive officer of the State Board of Health, is designated to act for the Board in the enforcement of the Residential Pesticide Spraying Regulations, and to carry out the administrative duties connected therewith.
"(b) Staff of the State Health Officer  The staff of the State Health Officer, consisting of the directors of the bureaus or other authorized divisions, are designated as agents of the Board, and, under supervision of the State Health Officer, will assume responsibility for carrying out the provisions of Residential Pesticide Spraying Regulations in their respective authority.

*875 "(c) Local Health Officers Deputized  Local Health Officers in health units organized under provisions of Chapter 154, Florida Statutes 1941, and such other local health officers as may be named and approved by the State Health Officer, are, for the purpose of carrying out the provisions of the Residential Pesticide Spraying Regulations, designated as agents of the State Board of Health, and deputies to the State Health Officer, within the geographical jurisdiction of their organization: Provided, however, their authority will be confined to recommendations to the State Health Officer or the central organization division concerned."
093.22 "Penalties  Penalties shall be, unless otherwise provided in these regulations, in accordance with Florida Statutes 381.411, 1959:
"(1) Any person who violates any of the provisions of this act, any quarantine or any rule or regulation promulgated by the Board under the provisions of this act is guilty of a misdemeanor and subject to be punished by imprisonment not exceeding six (6) months or by fine not exceeding one thousand ($1,000.00) dollars.
"(2) Any person who interferes with, hinders, or opposes any agent, officer, or member of the board in the discharge of his duties is guilty of a misdemeanor and subject to be punished by imprisonment not exceeding six (6) months or by fine not exceeding one thousand dollars ($1,000.00)."
Concisely, the foregoing rules enacted by the State Board of Health demonstrate an arrant attempt by that Board to usurp the judicial, legislative and executive powers of the three constitutional branches of government. The Board, by its action, has: seized control of a private industry without legislative grant; invaded the rights of citizens to engage in this industry; conferred upon itself the power to determine which persons may work in this industry and the power to remove an individual from employment in same; delegated to itself the judicial power of regulating the industry without providing for an appeal to the established judiciary; legislated in many instances, including a finding that any person engaging in this lawful industry, without its approval, is now guilty of a crime and subject to imprisonment; bestowed upon itself the executive power to appoint what it terms "an advisory council" and made an appropriation of tax funds for such council's expenses without limitation.
At this point a review of a few primary precepts of constitutional law as enunciated by our Supreme Court is in order. The legislature may not delegate the power to enact a law, to declare what a law shall be, or to exercise an unrestricted discretion in applying a law.[6] The legislature in enacting a law complete in itself may especially authorize an administrative commission within fixed and valid limits to provide rules and regulations for the complete operation and enforcement of the law within its express general purpose.[7] The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and the conferring of authority or discretion to make rules and regulations as to the execution of a properly enacted law.[8] A statute that is too vague and incomplete as a law in itself cannot be used as the vehicle for an administrative body to proceed to establish, attempt and promulgate a code for regulating a particular industry.[9] The rule-making *876 power of the Board is limited to the making of rules and regulations necessary to the enforcement of the act.[10] It is incumbent upon an agency relying on an act as authority for its regulations to prescribe only such regulations as come within the specifications laid down.[11] "When regulations are to be imposed in order to promote health, welfare, safety and morals it is necessary that exactions be fixed in the ordinance with such certainty that they not be left to the whim or caprice of the administrative agency * * *."[12]
Bearing in mind the foregoing constitutional precepts it appears that a cursory analysis of the purported regulations promulgated by the Florida State Board of Health completely fail to meet these basic principles of law. For instance, the statutory authority relied upon by the Florida State Board of Health states nothing concerning the regulation of this specific industry, but deals with the execution of "enacted" laws. That the promulgated regulations are the subject matter for a legislative act is most apparent by looking to Chapter 482, Florida Statutes, F.S.A., the structural pest control act. The legislature in this instance specifically granted to the State Board of Health authority to regulate this specific subject matter. The contents of Chapter 482 are amazingly similar to the contents of the regulations promulgated by the State Board of Health, leading one to believe that a good portion of the rules "enacted" by the State Board of Health were extracted from Chapter 482. This similarity within itself displays the legislative characteristics of the promulgated rules. It is submitted that if the legislature had intended for the State Board of Health to possess the far reaching authority and power set out in the regulations being considered, it would have enacted a chapter upon the subject matter as it did in the structural pest control act and would not have depended upon the State Board of Health to hang its hat upon such a tenuous provision as "execution of any other purpose or intent of the laws enacted for the protection of the public health of Florida."
A review of the cases construing the constitutionality of the rules and regulations promulgated by administrative agencies reveals that in each instance a specific grant of authority has been attempted to be delegated by the legislature,[13] and that such authority has not been assumed by such agencies on the basis of implication or such vague and general provisions as relied upon by the State Board of Health in the instant case. Such was true in the following enumerated cases: Bailey v. Van Pelt[14] concerned construction of a specific grant of authority contained in an act creating the State Livestock Board; State ex rel. Davis v. Fowler[15] dealt with an act providing specific authority for a Board of Examiners of Plumbers; Ex parte Lewis[16] involved a statute specifically authorizing a Board of County Commissioners to provide for closed fresh water fishing season; Spencer v. Hunt[17] construed an act to regulate the practice of dentistry; Richardson v. Baldwin[18] interpreted a specific act granting powers and duties to the State Plant Board; Pridgen *877 v. Sweat[19] is another case construing the legislative act delegating specific powers to the State Board of Dental Examiners: State ex rel. Hollywood Jockey Club, Inc. v. Stein[20] interpreted the specific legislative grant of authority to the State Racing Commission; Milk Commission v. Dade County[21] involved a specific grant of authority by the legislature to the Florida Milk Commission; and, Robbins v. Webb's Cut Rate Drug Co.[22] is an interpretation of the powers and duties delegated by the legislature to the State Barber's Sanitary Commission.
Even assuming by a far stretch of imagination that the State Board of Health has the power to promulgate such rules and regulations, the very terms of same are repugnant to the case law upon the subject matter. In the licensing provisions employers may not engage in or solicit business or perform residential pesticide spraying until their applications are completed on forms prescribed by the Board, which forms shall embody such information as the Board may require. Such a provision falls far short of prescribing reasonable standards which enable the affected public to meet the requirement of the enactment. Under this provision the Board would be authorized to include in the application any matter that it in its unbridled discretion might deem appropriate, and it might change from time to time its forms as it saw fit. Such action would open the door to rank discrimination as between applicants without any means of redress.[23] The same criticism is applicable to the requirement that an employee's application for a permit shall be forwarded to the Board. For an employee's acceptance or rejection, the Board requires that he "must be able to read and write sufficiently well to read and understand laws and regulations which govern this activity, and shall satisfy the Board in a manner to be designated by it in the application form, that he is capable of safely handling and applying pesticides in residential areas." In other words, the Board has absolute and unbridled power to decide who should be granted a permit. An applicant could read the rules of the Board of Health backwards and forwards and could not obtain any information whatsoever as to just what he would have to do to obtain the permit. The major requirement is that he shall complete an application form as prescribed by the State Board of Health and then the State Health Officer may refuse to issue the permit commensurate with the circumstances.[24] This is the type of arbitrary authority that due process prohibits.
That the field sought to be regulated by the State Board of Health and the regulations promulgated have a salutary purpose is not disputed, and this opinion is not to be construed as holding that such field of regulation is beyond the power of the state through legislative act to control and regulate. However, the State Board of Health has not been granted this power and cannot of its own volition invade this field without the proper grant of authority. This is not a case where the legislature has attempted to delegate its responsibilities to a board. It is simply a case where a board has decided that a field is open for regulation, has lassoed this field, and then looked for authority upon which to hold on to its prize steer. To hold that boards may invade the legislative field upon such dubious authority would, in our opinion, be another step towards government by bureaucracy and the abolition of the legislative branch.
*878 The decree is hereby reversed with directions to reinstate the second amended bill of complaint for further proceedings consistent with the foregoing opinion.
CARROLL, DONALD K., Chief Judge, and STURGIS, J., concur.
NOTES
[1] Constitution of Florida, Art. XV, § 2, F.S.A.
[2] 6 Fla.Jur., Constitutional Law, § 32; 4 Fla.Law and Practice, Constitutional Law, § 6.
[3] Barrow v. Holland, 125 So.2d 749 (Fla. 1960).
[4] Constitution of Florida, Art. IV, § 30.
[5] State ex rel. Hollywood Jockey Club, Inc., v. Stein, 133 Fla. 530, 182 So. 863, 868 (1938).
[6] State v. Atlantic Coast Line Railway Co., 56 Fla. 617, 47 So. 969, 32 L.R.A.,N.S., 639; Pridgen v. Sweat, 125 Fla. 598, 170 So. 653. Also see 1 Fla.Jur., Administrative Law, § 35 and cases cited.
[7] State ex rel. Davis v. Fowler, 94 Fla. 752, 114 So. 435, 437 (1927).
[8] Ex parte Lewis, 101 Fla. 624, 135 So. 147, 151 (1931).
[9] State v. Fowler, see Footnote 7.
[10] Richardson v. Baldwin, 124 Fla. 233, 168 So. 255, 256 (1936).
[11] Robbins v. Webb's Cut Rate Drug Co., 153 Fla. 822, 16 So.2d 121 (1944).
[12] Phillips Petroleum Co. v. Anderson, 74 So.2d 544, 547 (Fla. 1954); City of West Palm Beach v. State ex rel. Duffey, 158 Fla. 863, 30 So.2d 491, 492 (1947).
[13] Except Barrow v. Holland, Footnote 3, which involved constitutional powers as previously discussed.
[14] Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789 (1919).
[15] State ex rel. Davis v. Fowler, Footnote 7.
[16] Ex parte Lewis, Footnote 8.
[17] Spencer v. Hunt, 109 Fla. 248, 147 So. 282 (1933).
[18] Richardson v. Baldwin, 124 Fla. 233, 168 So. 255 (1936).
[19] Pridgen v. Sweat, Footnote 6.
[20] State ex rel. Hollwood Jockey Club, Inc. v. Stein, Footnote 5.
[21] Milk Commission v. Dade County, 145 Fla. 579, 200 So. 83 (1940).
[22] Robbins v. Webb's Cut Rate Drug Co., Footnote 11.
[23] Pridgen v. Sweat, Footnote 6.
[24] Barrow v. Holland, Footnote 3.