QUESTIONS: 1. May the Department of Health and Rehabilitative Services, or any division thereof, employ or retain citizen volunteers as independent contractors by the payment of one dollar per year to such person from agency OPS funds? 2. Is a volunteer eligible for workmen's compensation benefits if injured while performing volunteer services for the department or division, regardless of his paid or nonpaid status? 3. May the department pay for insurance coverage on the private vehicle of a citizen volunteer used to convey patients, inmates, or clients to or from any department, or division facility? 4. Can a citizen volunteer, when acting in behalf of the Division of Corrections, be "legally commissioned" as other employees of the division supervising inmates of state correctional institutions?
SUMMARY: The Department of Health and Rehabilitative Services, or any division thereof, may only employ or retain citizen volunteers as independent contractors paid from appropriated OPS (Other Personal Services) funds if such operating agency units are authorized by law to contract for personal services. A paid or nonpaid citizen volunteer is eligible for workmen's compensation benefits if an employer-employee relationship is created. Neither the department, nor any of its principal units, may pay for insurance coverage on a citizen volunteer's motor vehicle used to transport patients, inmates, or clients of the agency. The Division of Corrections has the authority to prescribe rules of conduct and assignment of authorized personnel of the correctional system, but it has no authority to legally "commission" certain employees as inmate supervisors. Since questions 1, 2, and 3 are interrelated they will not be considered separately except in summary. AS TO QUESTIONS 1, 2, AND 3: It is not necessary for me to cite authority for the general rule that the Department of Health and Rehabilitative Services, and the various divisions comprising this state agency, have only such power or authority as may be conferred upon them by statute or necessary implication derived therefrom. Thus, in respect to the department, or one of its divisions, entering into a contract or agreement with a citizen who volunteers his services to the agency or one of its principal units (see s. 20.19(2), F.S.), we must first ascertain whether the offer of service can be accepted by the agency.
Utilizing various statutory references in Florida Statutes 1971, the Divisions of Health and Mental Health appear to have unrestricted authority to accept any services offered by an individual in aid of any of their present or future programs undertaken, maintained or proposed. See ss. 381.201 and394.457(4), F.S. 1971. When considering the authority of the department per se it is restricted, by the authority and purpose of Ch. 409, F.S., to accept offers of personal services, assistance or other aid which are offered to its programs of public assistance or family service. See s. 409.026(6)(c), F.S. On the other hand, the Bureau of Alcoholic Rehabilitation and the Division of Vocational Rehabilitation may accept various "gifts" and materials (see ss. 396.052(2), 413.29, F.S.) but of these two only the Bureau of Alcoholic Rehabilitation may contract for services [s. 396.052(2)] and similar contracting authority has been given to the Bureau of Blind Services under s. 413.011(9), F. S. Insofar as the statutes regarding the Divisions of Youth Services and Corrections are concerned, there appears to be no authority expressed for the acceptance or contracting of personal services (see Chs. 945 and 951, F.S.), and if such be desired, these agencies must of necessity look to the general law relating to financial matters, Ch. 215, F.S. Clarifying the status of a "volunteer" according to various cases cited in 44 Words and Phrases Volunteer pp. 732-761 (1973 P.P. pages 40-41), the person offering the service must have no interest in the outcome of his act and if he is assisting in the accomplishment of an objective of the party to whom he offered his service, he is not a volunteer insofar as their relationship is concerned. Assuming there is no "working" relationship between an individual and the agency — he comes in off the street and performs some type of service — the individual can claim nothing for his act in the form of reimbursement of expenses or compensation for injuries received while performing the service. Cf. City of Boca Raton v. Mattef,91 So.2d 644 (Fla. 1956). In order for an individual to attain some status which would entitle him to any employment benefits, the employer-employee relationship must be established. The word volunteer per se connotes that the individual's position is not that of an employee. See AGO 068-36. [Assuming, arguendo, that an agency has authority to enter into a contract or some other type of arrangement for the rendering of a personal service benefiting the agency, the distinction between an employee and independent contractor is determined by whether the person is subject to, or free from, agency control with regard to the details of the engagement, i.e., the agency's right to control the volunteer's performance of service.] Cf. Collins v. Federated Mut. Imp. 
Hdwe. Ins. Co., 247 So.2d 461 (4 D.C.A. Fla., 1971); National Sur. Corp. v. Windham, 74 So.2d 549 (Fla. 1954); City of Mount Dora v. Voorhees, 115 So.2d 586 (2 D.C.A. Fla., 1959). To employ an independent contractor the agency must have contract authority, and the independent contractor would not be eligible for benefits for workmen's compensation until he comes under the control of the agency. Under this arrangement, the agency receives only the end product of his services. In order for an independent contractor to receive any travel expense reimbursement, his arrangements with the agency must include "expense reimbursement"; otherwise we must assume that the service he renders includes his travel. If the volunteer was employed for compensation at the rate of one dollar per year, he may well be considered an employee, in a status other than permanent, and thus entitled to the benefits accruing to him, i.e., workmen's compensation, see cases cited in AGO 068-36, supra, and travel expense reimbursement. See s. 112.061(7)(e), F. S. The form, method or amount of remuneration for services rendered is generally held to be immaterial in determining whether one is or is not an employee under the workmen's compensation laws. Direction and control of the employee is the main test in determining whether there exists an employer-employee relationship (35 Fla.Jur. Workmen's Compensation s. 33), and the agency's authority to prescribe working hours, supervise performance or terminate a service is sufficient to create an employment situation notwithstanding that the only compensation is a gratuity for services rendered. (Cf. Cantor v. Cochran, 184 So.2d 173 [Fla. 1966] receiving "tips"; Bienvenido v. Fontainebleau Hotel,128 So.2d 1 [Fla. 1961] food allowances.) The agency's payment out of OPS (Other Personal Services) is the disbursement of compensation for services rendered by a person who is not a regular or full-time employee filling an established position, and primarily such payments would be in accord with the provisions of s.216.011(1)(a), F.S., et seq., as well as other applicable provisions of Chs. 215 and 216, F.S. Concerning the question of insurance coverage of a citizen volunteer's motor vehicle while used to transport inmates of various state institutions, primarily it relates directly to the status of such a volunteer. Suffice it to say, an agency head could authorize the utilization of a private motor vehicle in connection with such a person's necessary travel of benefit to the agency. See s. 112.061(2)(e) and (7), F. S. However, whether the authorized person is paid a monthly allowance or receives mileage reimbursement for use of his private vehicle, such payments apply to the use of the vehicle only. Specific reimbursement for vehicle insurance, which is directly related to the operation and private ownership of the private vehicle, is prohibited. Based on the above, it is my opinion that the employment of a citizen volunteer by either the Department of Health and Rehabilitative Services or a principal unit thereof is directly dependent upon the agency's expressed or general power to contract for such services, including the acceptance of noncompensated aid or assistance. As to a citizen volunteer's entitlement to workmen's compensation benefits, that will depend on the particular relationship between the agency and the volunteer, and regardless of a volunteer's status with the agency, under no circumstances is the agency authorized to pay for insurance coverage for the private motor vehicle of the volunteer while rendering personal services to the department or its various principal units. AS TO QUESTION 4: In your fourth question you refer to "legally commissioned" personnel of the Division of Corrections supervising inmates. I can only assume that such a reference to a "commission" is referring to the qualifications, standards of conduct, and appeal procedures set forth in Division of Corrections Rule 10B-2.01 through 10B-2.03, Florida Administrative Code. If this assumption is correct, the authority on which these rules are based, in part, is former s. 945.23, F. S. 1969, authorizing a civil service system in the Division of Corrections. However, this authority was repealed by Chs. 71-355 and 71-377, Laws of Florida, and presently the remaining authority indicated in the code merely provides for rules dealing with conduct of custodial and other personnel, and the authority to classify and assign personnel within the division. Apart from the general grant of authority to promulgate regulations governing the correctional system, see ss. 945.21(1)(e) and (f), F.S., I can find no specific authorization for a separate commissioned service within the corrections system. (See also, s. 951.06, F.S., Division of Corrections county guard employment standards.) Since neither the department nor the Division of Corrections has any authority to create a commission service, and it is incumbent on the agency that its rule-making authority be exercised within the specifications laid down by the legislature, I find no restrictions on the division's authority to assign its personnel to supervising or guarding inmates as provided by s. 945.21(1)(f), supra. See Lewis v. Florida State Board of Health, 143 So.2d 867,876-877 (1 D.C.A. Fla., 1962). Therefore, in view of the lack of expressed authority permitting the utilization of citizen volunteers and the commissioning of certain personnel, question 4 is answered in the negative. In closing, may I point out that the conclusions reached in this opinion do not affect authorized programs in one division of the department functioning in an area operated by another principal unit of the department, i.e., volunteers of the Division of Mental Health rendering mental health services at Division of Corrections facilities. The basic problem indicated by this request is generated by the assumption of an expressed authority of one unit being used and exercised as authority for another division's activities and as yet the legislature has not per se vested general authority in the department that can be applicable to all principal units of the agency.