Ernest Ellison Auditor General Tallahassee
QUESTION:
May the board of trustees of a community college district adopt rules regulating parking and traffic on the college campus and enforce such rules, adjudicate guilt or innocence of violators, and fix, exact, and dispose of fines or penalties or otherwise impose penalties, for violation of such rules?
SUMMARY:
The board of trustees of a community college district is without lawful authority to adopt rules regulating parking and traffic on the community college campus and to enforce such rules, adjudicate the guilt or innocence of violators, fix, exact, collect, and dispose of fines or penalties for violations thereof.
Your question appears to arise from the following factual situation. The Auditor General's Office, during the course of postaudits, has become aware that several of the boards of trustees of community colleges in Florida have adopted rules and regulations concerning parking and traffic control on community college campuses and have imposed monetary penalties or fines for violation of these rules. Your office questions whether or not the boards of trustees possess the legal authority to adopt these rules and impose fines or monetary penalties for violations thereof.
A community college district board of trustees has no inherent or common law powers. It has only those powers which have been conferred by statute. Cf. Bucks v. McLean, 115 So.2d 764 (1 D.C.A. Fla., 1959); Harvey v. Board of Public Instruction, 133 So. 868
(Fla. 1931); and AGO's 076-61 and 075-148 holding that the powers of district school boards are limited by law and that the extent of their powers may be enlarged or modified only by the Legislature. This concept is based upon the doctrine that the police power is an inherent attribute of the state's sovereignty which is vested in and resides in the Legislature, and not in community college districts or other creatures of the Legislature. Section 1, Art. III, State Const. Such entities may be and often are delegated a part of this police power to carry out their functions. Cf., e.g., ss. 239.53, et seq., F. S., wherein the state universities (not including community colleges) have expressly and in detail been delegated the authority to regulate traffic on campuses, including the power to promulgate parking and traffic rules, the quasi-executive power to make arrests for violations thereof, the quasi-judicial power to adjudicate guilt or innocence of offenders, and to fix and exact fines or penalties for violations. Without statutorily delegated police power from the Legislature, however, a community college board of trustees or like entity is without power to exercise any part of the state's police power or sovereignty. See Barrow v. Holland, 125 So.2d 749
(Fla. 1960); Lewis v. Bd. of Health, 143 So.2d 867 (1 D.C.A. Fla., 1962), cert. denied, 149 So.2d 41 (Fla. 1963). See generally 16 C.J.S. Const. Law ss. 66, 70 and 106. Also, compare Lopez v. Williams, 372 F. Supp. 1279 (S.D.Ohio 1973) aff's, Goss v. Lopez,415 U.S. 912 (1975), with Banks v. Bd. of Pub. Instruction,314 F. Supp. 285, 290 (S.D.Fla. 1970), aff's, 450 F.2d 1103 (5th Cir. 1970), vacated, 401 U.S. 988 (1971). Hence, such boards may exercise only those powers specifically or by necessary implication authorized by the Legislature. If there are any doubts as to the existence of authority, it should not be assumed. Hopkins v. Special Road and Bridge District No. 4, 74 So. 310
(Fla. 1917); Harvey v. Board of Public Instruction, supra; State v. Ausley, 156 So. 909 (Fla. 1934); State v. Culbreath,174 So.2d 422 (Fla. 1937); Gessner v. Del-Air Corp., 17 So.2d 522 (Fla. 1944); State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974) cert. dismissed,300 So.2d 900 (Fla. 1974); cf. AGO 078-12.
I find no express provision in the statutes governing community colleges, ss. 230.741-230.776, F. S., which delegates any part of the police power to regulate traffic, to promulgate and enforce parking and traffic regulations, to adjudicate guilt, or to set or exact fines or penalties. (Cf. AGO 077-56, wherein I stated that community college boards of trustees could not employ security or police officers vested with the power to make arrests nor could they grant such authority to employees of their security departments since such exercise of the policy power must be lawfully delegated before it can be exercised and there was no statutory delegation thereof.) In contrast, I note the explicit and specifically detailed authorization granted by ss. 239.53, etseq., supra, and ss. 316.006, 316.008, and 316.072, F. S., to state universities and to municipalities and counties, respectively, to regulate within the exercise of expressly delegated police power on university campuses or grounds or within the jurisdiction of the counties and municipalities. These sections grant extensive power to promulgate parking and traffic regulations governing vehicles, pedestrians, and ridden or herded animals (ss. 239.53 and 239.54, F. S.), and vehicles, bicycles, and pedestrians (ss. 316.008 and 316.072, F. S.), and the power of enforcement, arrest, adjudication, and imposition of fines. The community college boards of trustees are granted no such express powers by the Legislature.
I note that prior to the enactment of Ch. 29723, 1955, Laws of Florida, codified in ss. 239.53-239.58, F. S. 1975, this office answered a number of questions from the University of Florida and the Board of Control (now Board of Regents) regarding their authority to promulgate traffic regulations enforceable by imposition and collection of fines. Attorney General Opinion 047-395, Biennial Report of the Attorney General, 1947-1948, p. 339; AGO 051-165, Biennial Report of the Attorney General, 1951-1952, p. 421; AGO 052-73, Biennial Report of the Attorney General, 1951-1952, p. 419. It was held that the Legislature had not delegated any part of its police power to the university or to the Board of Control (Board of Regents) to set and enforce fines for traffic violations.
Accordingly, my predecessors in office concluded that, without express legislative authorization to promulgate parking and traffic regulations, to set and enforce fines, to arrest, and to adjudicate the guilt of offenders, the Board of Control (Board of Regents) could not lawfully do so. Similarly, since the Legislature has not granted the community college boards of trustees these powers, I conclude they may not exercise them. I note that ss. 239.53-239.58, F. S., grant the Board of Regents traffic control authority on the `[g]rounds' of `institution[s].' `Institution' for the purposes of ss. 239.53-239.58 is defined as `any university or agency under the jurisdiction of the Board of Regents.' Section 259.53(1)(g), F. S. Further, for purposes of the Florida School Code (of which Ch. 239 is a part) `[i]nstitutions of higher education' is defined as consisting of `all state-supported educational institutions offering work above the public school level, other than community colleges' (Emphasis supplied.), s. 228.041(1)(c), F. S., while `[c]ommunity colleges' is defined to `consist of all educational institutions operated by local community college district boards of trustees under specific authority and regulations of the state board (of education).' Section 228.041(1)(b), F. S.
I now turn to an analysis of the authority which the Legislature has granted to community college boards of trustees to determine whether the authority to control parking and traffic, to enforce traffic regulations, to make arrests, to adjudicate guilt, and to impose penalties may be implied from such powers as have been granted. For the reasons set forth below, I conclude that it may not.
A community college board of trustees has been created for each community college district, `which, under statutes and other rulesand regulations of the state board (of education)' (Emphasis supplied.) shall have `all powers necessary and proper for the governance and operation' of the community college. Section 230.753(2)(a), F. S.; see also s. 228.041(1)(b), F. S., defining community colleges as those `educational institutions operated by local [boards] under specific authority and regulations of thestate board . . . .' (Emphasis supplied.) These boards are vested with responsibility to operate the community colleges with such authority as may be needed for the proper operation thereof inaccordance with the regulations of the State Board of Education. Section 230.754(1), F. S. The regulations promulgated by the State Board of Education implementing the Florida School Code, Chs. 228,et seq., F. S., have `the full force and effect of law,' if within the scope and intent of, and not in conflict with, the statute. Sections 229.041 and 229.053, F. S.; see also Florida Livestock Board v. Gladden, 76 So.2d 291, 295 (Fla. 1954). Section 6A-14.56, F.A.C., the State Board of Education rule regarding control and discipline of community college students, provides that the boards of trustees `shall adopt such rules as are necessary for the proper control and discipline of students in a community college.'
It can be seen from the above that the boards of trustees and the State Board of Education have been granted general rulemaking authority as regards the control and discipline of students within the colleges. The question now becomes whether such general grant of authority includes the authority to exercise the police power of the state to regulate parking and traffic, including the power to arrest, adjudicate guilt, levy fines, or impose other penalties. Section 18, Art. I, State Const., prohibits any administrative agency from imposing any penalty except as providedby law. It must be borne in mind that a general grant of rulemaking authority is always circumscribed by and subject to the limitations of the statute authorizing the rules. The board may make only those rules and regulations which are necessary to carry out the prescribed statutory responsibilities or to enforce the act creating the board. Rulemaking power is limited to making rules that fairly may be said to fall within the scope and intent of the statute. Gladden, supra; Lewis v. Florida State Board of Health, 143 So.2d 867 (1 D.C.A. Fla., 1962), cert. denied,149 So.2d 41 (Fla. 1963). None of the statutes or the rule quoted above may fairly be said to authorize the boards of trustees to exercise any part of the police power of the state to control and regulate traffic, or to impose penalties for traffic violations. None of the authorizing statutes refers directly or indirectly to traffic control or regulation. None bestows the power of arrest on, or authorizes the boards to grant arrest power to, any officers or to establish or create an adjudicatory body, to impose fines or penalties and dispose of moneys collected, or to take any other penal action.
In 1977, the Legislature enacted Ch. 77-59, Laws of Florida, `[a]n act relating to discipline in community colleges and state universities,' codified as s. 230.754(2)(j), F. S., which provides:
 The board of trustees may adopt, by rule, a uniform code of appropriate penalties for violations of rules by students and employees. Such penalties, unless otherwise provided by law, may include fines, the withholding of diplomas or transcripts pending compliance with rules or payment of fines, and the imposition of probation, suspension, or dismissal.
By this provision, the Legislature has obviously undertaken to broaden the power to the board over discipline of students and employees and setting penalties for violation of the rules of conduct. However, it is my opinion that the language of this section in no way manifests a legislative intent to grant to the boards of trustees authority in the exercise of the police power to control and regulate traffic on campus or to enforce such rules with fines or monetary penalties. Apart from the fact that the title of Ch. 77-59 provides no notice of any legislative intent and purpose to delegate any part of the state's police power to community colleges to regulate traffic and fix monetary penalties for violations of authorized traffic control rules or regulations and otherwise enforce such regulations, my conclusion is based upon the following considerations.
First, Ch. 316, F. S., the `Florida Uniform Traffic Control Law,' was enacted `to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply to all municipalities.' Sections 316.001 and 316.002, F. S. The provisions of Ch. 316 apply `wherever vehicles have the right to travel.' (Emphasis supplied.) Section 316.072(1), F. S. Jurisdiction to control traffic is vested specifically and solely in the state, municipalities, and counties of Florida. Section316.006, F. S. Section 316.008(1), F. S., specifically grants to municipalities and counties the authority to exercise the police power to regulate certain traffic and parking within their respective boundaries or jurisdictions in the particulars specified therein.
I am unable to find any legislative intent and purpose clearly manifested in the title to or in the enacting terms of Ch. 77-89,supra (s. 230.754(2)(j), F. S.), to grant this same authority under the police power to any other subdivision or agency of this state merely by use of such general language and authority as is employed and granted to community colleges by the Legislature. The difficulty with giving such a broad and extended meaning to the above-quoted provisions in light of Ch. 316, F. S., is emphasized by the fact that state universities have been expressly granted the power to regulate traffic and impose fines or penalties for violations by the specific language of ss. 239.53-239.58, F. S. Section 239.54, F. S., grants to each of the state universities the authority `to adopt rules which govern traffic on the grounds of that institution, which provide penalties for the infraction of such traffic rules.' Sections 239.55-239.57, F. S., provide for the imposition and collection of fines or penalties. Moreover, s. 239.54, F. S., explicitly provides that such rules prevail in the event of conflict with traffic ordinances of the municipality, if any, in which the university is situated, but that no rule may be adopted which conflicts with any provision of Ch. 316, F. S., which extends to and is applicable to the grounds of the institution. Further, municipal ordinances not in conflict with university rules extend to and are applicable upon university campuses and grounds. Section 239.55, F. S., provides that a violation of any traffic regulation enumerated in Ch. 316, F. S., shall be charged and proceeded against in accordance with Chs. 316 and 318, F. S.
Thus, the grant of power by which the universities derive authority to control and regulate traffic is express and detailed, and was so written as to mesh with and complement Chs. 316 and 318. In contrast, s. 230.754(2)(j), F. S., is a general grant of authority relating to rules of conduct and discipline for students and employees making no mention of traffic control and regulations or enforcement thereof. Consistent with Chs. 316 and 318, F. S., and ss. 239.53-239.58, F. S., and the legislative intent expressed in the title of Ch. 77-59, supra, I conclude that s. 230.754(2)(j), is, in and of itself and without more, legally insufficient to confer on or grant to the boards of trustees of state community colleges the authority control and regulate campus traffic under the state's police power, to enforce such traffic regulations, to adjudicate guilt of violators thereof, or to fix and dispose of fines or penalties collected pursuant to any such traffic rules.
Second, Ch. 77-59, Laws of Florida, applies to and relates to discipline in state universities as well as in community colleges. It amended s. 240.245, F. S., relating to `[d]isciplinary rules and regulations,' and added thereto new subsection (2), which grants to the Board of Regents the identical rulemaking powers over discipline in the state universities as s. 230.754(2)(j), F. S., grants to the boards of trustees of community colleges. Hence, s. 230.754(2)(j), F. S., must be read in pari materia with s. 240.045(2), F. S. The purpose of Ch. 77-59 and both of said sections is the same, to provide a uniform code of penalties for violations of disciplinary rules for the students and employees of both state educational institutions. Section 240.045(2), F. S., clearly was not intended by the Legislature to supplant or modify or replace the very explicit statutory scheme already enacted and operating regarding traffic control and regulation on university campuses and the enforcement of and imposition of penalties for violations of authorized traffic regulations. The title of Ch.77-59, the catchline of the section, and the body thereof refer or relate to discipline and disciplinary rules and regulations, not to traffic control or regulation or enforcement of traffic regulations and penalties for violations thereof, making no references thereto or to ss. 239.53-239.58, F. S. It was obviously intended to supplement other powers relating to discipline already conferred. See s. 239.045(1), F. S. It is my opinion that s. 230.754(2)(j), F. S. (Ch. 77-59), grants to the boards of trustees neither more nor less authority than that conferred upon the Board of Regents by s. 240.045(2) (Ch. 77-59). It confers powers over discipline of students and employees on campus and neither by its terms nor by necessary implication grants authority to control and regulate traffic and parking on campus or to enforce traffic regulations, including those contained in Ch. 316, F. S. I also note that Rule 6A-14.56, F.A.C. (relating to control and discipline of community college students), was amended in 1977, after the effective date of Ch. 77-59 and concerns only the control and discipline of students, making no reference to traffic control and regulation or enforcement of traffic regulations.
Third, there is some question as to whether rulemaking authority over traffic control and regulation, including enforcement, power of arrest, adjudication of guilt, and levying of fines or penalties could be constitutionally delegated by the Legislature to the Board of Education or the boards of trustees by such a broad indefinite grant of the police power as that contained in s. 230.754(2)(j), F. S. It is well established that the Legislature may delegate quasi-executive, quasi-legislative, and quasi-judicial powers to administrative agencies and vest them with rulemaking authority. However, it is equally settled that unbridled discretion may not be delegated to administrative officials. Statutes delegating powers to administrative agencies must set forth clear and definite guidelines and standards to guide and limit the agencies in their execution of the delegated discretion and powers and must `so clearly define the power delegated that the administrative agency is precluded from acting through whim, showing favoritism or exercising unbridled discretion.' Lewis v. Bank of Pasco County, 346 So.2d 53 (Fla. 1977); State Dept. of Citrus v. Griffin, 239 So.2d 577 (Fla. 1970); Pinellas County v. Jasmine Plaza, Inc., 334 So.2d 639 (2 D.C.A. Fla., 1976); Flesch v. Metropolitan Dade County,240 So.2d 504 (3 D.C.A. Fla., 1970). A statute that is too vague or incomplete in itself to provide adequate safeguards and guidelines may not constitutionally be used by an administrative body as authority to promulgate rules. Lewis v. Fla. St. Bd. of Health,143 So.2d 867, cert. denied, 149 So.2d 41 (Fla. 1963).
These requirements are particularly applicable where imposition of penalties, including the levying of fines, is concerned. As with penal statutes, statutes imposing fines must be strictly construed and may not be extended by construction to acts not within the express intent of the Legislature. The presumption is against an agency or officer who seeks to impose a fine for an act which is `beyond the letter [of a statute] even though within [its] spirit.' 70 C.J.S. Penalties ss. 1 and 1(b); Adler-Built Industries, Inc. v. Metropolitan Dade Co., 231 So.2d 197 (Fla. 1970); Hotel and Restaurant Commission v. Sunny Seas No. One, Inc., 104 So.2d 570 (Fla. 1958); Jasper v. St. Petersburg Episcopal Community, Inc., 222 So.2d 479 (2 D.C.A. Fla., 1969).And see, National Education Assoc. v. Lee County Bd. of Public Instruction, 299 F. Supp. 834 (M.D.Fla. 1969), stating that, in Florida, the `principle of narrow construction is particularly applicable to the question of whether a governmental agency has authority to impose a fine, a function normally confined to courts.' Hence, even assuming a fine may be imposed by rule, the Legislature, in authorizing the rule, must make it clear that its grant of power includes the authority to levy fines for specified acts or conduct and must establish sufficient specifications and limitations to guide the administrative agency in promulgating and enforcing any such rule. See s. 18, Art. I, State Const., which provides that no administrative agency may provide a penalty `except as provided by law.' (Emphasis supplied.) Cf., e.g., s.125.69, F. S., by which the Legislature has authorized punishment by fine for violations of county ordinances (which are declared to be misdemeanors) and has specifically set out a maximum amount of $500 which may be imposed and collect; see also AGO 071-223; andsee s. 9, Art. IV, State Const., granting to the Game and Fresh Water Fish Commission the regulatory and executive authority over wild animals and fresh water aquatic life, excepting that `penalties for violating regulations of the commission shall be prescribed by specific statute.' Chapter 372, F. S., prescribes these penalties with specificity.
It is highly questionable, if not beyond question, that s. 230.754(2)(j), F. S., could be read in light of the above discussion to lawfully authorize the boards of trustees to adopt rules regulating traffic, authorizing arrest of violators, providing for adjudication of guilt, or granting power to impose, exact, and dispose of fines or penalties. These are all quasi-executive, quasi-legislative, or quasi-judicial functions exercised under the police power of the state. As I stated in AGO 078-56, a community college district `lacks legislatively conferred authority to employ law enforcement officers and lacks conferred authority to vest officers employed by the district with authority to bear arms and make arrests.' Moreover, I find no statutory provision authorizing the establishment of an adjudicatory body or the imposition and collection of fines or penalties for violations of any traffic regulations, which pursuant to s. 18, Art. I, State Const., must be `provided bylaw.' (Emphasis supplied.) I find nothing purporting to set an amount that can be imposed and exacted as a fine or penalty, or authorizing anyone to impose, exact, collect, or dispose of fines or penalties. Once against, I note the contrast between this provision, a broad and indefinite (except as to discipline) grant of power with no guidelines or specifications for the agency to follow in promulgating rules and regulations, governing traffic control and regulation, and ss. 239.53-239.58, F. S., in which all of these things are spelled out with particularity in granting to the Board of Regents authority to control traffic on state university campuses. Had the Legislature intended to grant the same authority to community colleges, it could have easily done so by essentially duplicating ss. 239.53-239.58, F. S., and applying their provisions to the boards of trustees of the community college districts. It is my opinion, however, based upon the authority cited and discussed above that the Legislature would not, and indeed lawfully could not, attempt to confer such authority upon the boards of trustees by the language employed by it in s. 230.754(2)(j), F. S. (Ch. 77-59, supra.)
Prepared by: Frank A. Vickory, Assistant Attorney General